# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2993

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Timothy Jerome McCall, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 12, 2007
Filed: November 5, 2007

_____

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

After Timothy McCall pleaded guilty to one count of being a felon in possession of a firearm, the district court sentenced him to the minimum fifteen-year sentence mandated for a felon-in-possession offender who has three prior "violent felony" convictions. See 18 U.S.C. §§ 922(g)(1), 924(e)(1). McCall appealed, arguing that his three prior Missouri convictions for driving while intoxicated were not violent felony convictions. We concluded that violating the statute in question, Mo. Rev. Stat. § 577.010.1, by *driving* while intoxicated constitutes a violent felony conviction. However, because the Supreme Court of Missouri has construed the statute to include causing a vehicle to function by merely starting its engine, we held that the statutory offense is "overinclusive," that is, it includes conduct that is not a

violent felony within the meaning of 18 U.S.C. § 924(e)(2)(B). Accordingly, we remanded for a determination of whether McCall's guilty plea convictions were violent felonies. United States v. McCall, 439 F.3d 967 (8th Cir. 2006) (en banc) (McCall I). On remand, the district court[1] again determined that McCall's driving-while-intoxicated offenses were violent felony convictions. McCall appeals the resulting fifteen-year sentence. We review *de novo* whether a prior offense constitutes a violent felony. United States v. Kirkland, 450 F.3d 804, 806 (8th Cir.), cert. denied, 127 S. Ct. 420 (2006). After oral argument, the Supreme Court filed its opinion in James v. United States, 127 S. Ct. 1586 (2007), which may alter somewhat the legal landscape. Applying James to the prior convictions here at issue, we affirm.

Section 924(e)(2)(B)(ii) defines "violent felony" as including "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Supreme Court first construed this provision in Taylor v. United States, 495 U.S. 575 (1990). Taylor raised the question whether the defendant's prior Missouri convictions for second-degree burglary fell within the explicit inclusion of "burglary" in § 924(e)(2)(B)(ii). The Court concluded that Congress intended the generic meaning of burglary. State burglary laws vary substantially. To determine whether a particular state offense is generic burglary, the Court adopted a "formal categorical approach" that focuses on the statutory definition of the offense, rather than on the particular facts underlying the defendant's conviction. 495 U.S. at 602.

Under this categorical approach, some state statutes are overinclusive. In such cases, the Court held, the government may use a prior conviction for enhancement if the charging paper and the jury instructions "actually required the jury to find all the

---

[1]The HONORABLE HENRY E. AUTREY, United States District Judge for the Eastern District of Missouri.

elements of generic burglary . . . ." 495 U.S. at 602. In <u>Shepard v. United States</u>, 544 U.S. 13, 26 (2005), the Court applied this modified categorical approach to prior convictions by guilty plea, holding that whether a violation of an overinclusive statute was generic burglary must be the determined by reviewing "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information."

In <u>McCall I</u>, we considered felony convictions for driving-while-intoxicated. Unlike burglary, this is not an enumerated offense, so the question was whether it fell within the "otherwise involves" residual provision in § 924(e)(2)(B)(ii). Following briefing and oral argument in this second appeal, the Supreme Court applied the "otherwise involved" provision in <u>James</u>, concluding that a Florida felony conviction for attempted burglary, though not an enumerated offense, fell within the residual provision. Our task is to determine whether the Court's analysis in <u>James</u> undermines any portion of our otherwise controlling analysis in <u>McCall I</u>.

In <u>McCall I</u>, we first concluded that the focus of § 924(e) is on the elements of an offense, not the facts of a particular conviction. Therefore, for a state law offense to fall within the "otherwise involves" provision, "the inherent potential for harm must be present, if not in every violation, at least in a substantial portion of the circumstances made criminal by the statute." 439 F.3d at 971-72. <u>James</u> is consistent with this aspect of our analysis. <u>See</u> 127 S. Ct. at 1597 ("the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another"). We then concluded that "a felony conviction for *driving* while intoxicated presents a serious potential risk of physical injury to another and is therefore a violent felony under the 'otherwise involves' provision." 439 F.3d at 972. <u>James</u> of course addressed a different offense, attempted burglary. But we see nothing in the Court's analysis that casts doubt on our

conclusion that driving while intoxicated falls within the otherwise involves provision. See 127 S. Ct. at 1594-97.

McCall I then addressed the issue raised by the Supreme Court of Missouri's construction of the driving-while-intoxicated offense. The statute is entitled "Driving while intoxicated." It provides: "A person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition." Mo. Rev. Stat. § 577.010.1 (boldface in original). However, another statute defines "operates" as "physically driving or operating a motor vehicle." Mo. Rev. Stat. § 577.001.1. In Cox v. Director of Revenue, 98 S.W.3d 548, 550-51 (Mo. banc 2003), the Court construed Mo. Rev. Stat. § 577.001.1 as applying both to "driving" a vehicle and to "operating" a vehicle by starting its engine. Because the latter type of conduct may not present a serious potential risk of physical injury to another -- for example, "the inebriated car owner who recognizes his impaired condition and turns on the engine of a parked vehicle to keep warm while sobering," 439 F.3d at 973 -- we concluded the Missouri offense is overinclusive and remanded for a determination of whether McCall's prior guilty plea convictions involved driving a vehicle. For this determination, we instructed the district court to apply the Supreme Court's modified categorical analysis, looking only at charging documents, plea agreements, and other parts of the judicial record appropriate to the "truncated inquiry" mandated by Shepard. 439 F.3d at 974.

James casts some doubt on this part of our analysis. Consistent with Taylor, the Court in James first rejected petitioner's contention that an offense is not a violent felony unless all cases pose a serious risk of physical injury to another:

> James' argument also misapprehends *Taylor's* categorical approach. We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . . As long as an offense is of a type that, by its nature, presents a serious

-4-

potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision.

127 S. Ct. at 1597.  But that was not the end of the Court's analysis in James because the Florida statute went beyond Taylor's definition of generic burglary to include attempted burglaries of dwelling curtilages and conveyances.  The Court considered the first question on the merits, concluding that attempted burglary of a dwelling's curtilage, as narrowly defined under state law, did not "so mitigate[] the risk presented by attempted burglary as to take the offense outside the scope of clause (ii)'s residual provision."  127 S. Ct. at 1600.  The Court did not consider the second question because the state court record established that James was convicted of attempted burglary of a dwelling, not a conveyance.  127 S. Ct. at 1599 n.7.

The critical question is how the Court would have proceeded if the record of the prior conviction required it to consider the second question *and* if it concluded that attempted burglary of a conveyance does *not* present a serious potential risk of injury to another.  Would it have directed the trial court, as we did in McCall I, to apply the modified categorical approach of Taylor and Shepard and determine whether the state court record reveals whether James was convicted of the violent felony component of an overinclusive statute?  Adherence to the precedent of Taylor would seem to call for that result when dealing with attempts to commit an enumerated offense like burglary.  But the Court might have departed from this aspect of the Taylor analysis when applying the residual provision, instead engaging in a quantitative assessment of whether most violations of the statute involve attempted burglaries of dwellings and therefore *all* prior convictions are violent felonies.  The difference in approach could be very significant in applying the otherwise involves residual provision to broadly worded state offenses.

In Taylor, the Court expressed great reluctance to engage in fact-intensive analysis of prior convictions in applying 18 U.S.C. § 924(e). 495 U.S. at 600-02.  The

Court in <u>James</u> adhered to this principle in applying the otherwise involves residual provision in § 924(e)(2)(B)(ii), focusing primarily on the statutory elements of an offense.  Thus, if a state statute defines a single violent felony offense, a defendant may not avoid the residual provision by arguing he committed that offense in a non-violent manner.  On the other hand, if the statute encompasses two crimes with different *elements*, only one of which is a violent felony, footnote 7 and the curtilage analysis in <u>James</u> suggest that the modified categorical approach will still apply.  In other words, if the statute combines two offenses, crime (a) and crime (b), and only the elements of crime (a) make it a violent felony, then to use a prior conviction for enhancement under § 924(e)(2)(B)(ii) the government must prove that the defendant committed crime (a), not crime (b).  In doing so, the government may use only the truncated evidence permitted by <u>Taylor</u> or <u>Shepard</u>, depending on whether the conviction followed a trial or a guilty plea.

In this case, the statute is entitled "Driving while intoxicated" and appears to encompass a single crime:  "A person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition."  However, "operates" is defined in § 577.001.1 as "physically driving *or operating* a motor vehicle," and in <u>Cox</u> the Supreme Court of Missouri held that the words driving and operating "have distinct meanings."  98 S.W.3d at 550.  At least in some circumstances, this construction seems to define a second crime with a distinct element -- operating a vehicle without driving it.  But "driving while intoxicated" is a felony only if the defendant is a "persistent offender."  Mo. Rev. Stat. § 577.023.3.  A persistent offender is one who has been found guilty of two or more "intoxication-related traffic offenses" within the past ten years.  § 577.023.1(2)(a).  An intoxication-related traffic offense is defined in § 577.023.1(1) as including driving while intoxicated; driving with an excessive blood alcohol content; driving under the influence of alcohol or drugs; or involuntary manslaughter, assault, or assault of a law

-6-

enforcement officer in the second degree.[2]  The primary focus of these intoxication-related traffic offenses is driving a vehicle -- the excessive risk of danger to others that is created when a drunk sets a vehicle in motion -- not sleeping in a parked car. Therefore, a charging paper alleging the *felony* offense of driving while intoxicated should be construed as referring to the dominant offense of *driving* while intoxicated. Cf. United States v. Painter, 400 F.3d 1111, 1114 (8th Cir.), cert. denied, 546 U.S. 1035 (2005).

At the initial sentencing hearing, the record consisted of evidence that may not be considered under Taylor and Shepard -- police reports and parole board records. On remand, the government introduced the plea colloquy underlying the third felony conviction in which McCall admitted driving a vehicle while intoxicated.  McCall concedes this was a violent felony conviction under McCall I.  However, for the first two felony DWI convictions, the government introduced only the charging papers and docket sheets reflecting that McCall entered Alford guilty pleas to both charges.[3]  The first information charged that McCall "committed the Class D felony of Driving While Intoxicated . . . upon Office Road at Goose Creek . . . ."  The second charged that he "committed the Class D felony of driving while intoxicated . . . on Missouri State Highway 34, west of Marble Hill . . . ."  Both charging documents cited the felony statute, Mo. Rev. Stat. § 577.023.3, as well as the driving-while-intoxicated statute, § 577.010.

The district court concluded that these charging papers and McCall's guilty pleas establish that he was "in fact driving the automobiles in question at the time of

---

[2]These crimes are committed by one who "[w]hile in an intoxicated condition . . . operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause" physical injury or death to a victim.  Mo. Rev. Stat. §§ 565.024.1(2), 565.060.1(4), 565.082.1(3).

[3]The government advised that it was unable to obtain transcripts of the guilty plea hearings from these two convictions.

the alleged offenses. . . . There is nothing, no evidence to suggest in any way, shape or form that the defendant was just sitting behind the wheel asleep or sitting in the car asleep with the engine running or not running." We agree.[4] The plain meaning of a felony charge of "driving while intoxicated" is that the defendant operated the vehicle in that condition by moving it, thereby creating the potential risk of serious physical injury to another identified in McCall I. No doubt to reduce difficulties of proof in less serious cases, the Missouri legislature and courts have more broadly defined the word "operating" to include situations in which the police come upon an inebriated person sitting behind the wheel of a parked car with the engine running. In some circumstances, this may create the distinct element of a second crime. But a guilty plea to the felony charge of "driving while intoxicated," without more, raises no inference that the offense was not a violent felony. To raise and preserve that issue under Shepard, "the defendant must lay the factual predicate . . . in his guilty plea." Painter, 400 F.3d at 1114.

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

I agree with the discussion and analysis of the Supreme Court's recent decision in James v. United States, 127 S. Ct. 1586 (2007), and the ultimate conclusion the modified categorical approach still applies to this case involving an overinclusive Missouri statute covering two separate offenses, only one of which qualifies as a

---

[4]McCall urges us to conclude that he did not admit he was guilty of the charged offenses for purposes of § 924(e)(2)(B) because he entered Alford pleas. See North Carolina v. Alford, 400 U.S. 25, 37 (1970). We reject this contention. Section 924(e)(1) applies to prior *convictions* for violent felonies. For this purpose, we see no distinction between convictions that result from Alford pleas, more typical guilty pleas, or jury verdicts. See Shepard, 544 U.S. at 19-20; United States v. Guerrero-Velasquez, 434 F.3d 1193, 1197 (9th Cir. 2006); United States v. Johnson, 326 F.3d 934, 936 (8th Cir. 2003).

violent felony under 18 U.S.C. § 924(e)(2)(B), rather than a single offense which factually can be committed in either a violent or nonviolent way. I part ways with the Court, however, in regard to its analysis of Missouri law itself. I disagree with the conclusion that the application of Missouri's Prior/Persistent Offender provisions somehow cures the problem by creating a presumption that a *felony* violation of the overinclusive statute transforms multiple offenses into a single, violent offense. I therefore respectfully dissent.

The overinclusive statute which purportedly subjects Timothy McCall to enhanced punishment under § 924(e)(2)(B) is Missouri Revised Statute § 577.010. Section 577.010.1 prohibits crimes involving both driving and nondriving conduct, but generally denominates both types of crimes as "driving while intoxicated." I mention *crimes* identified in § 577.010.1 because we previously recognized Missouri's "driving while intoxicated" crime includes the elements of both violent and nonviolent crimes for purposes of § 924(e)(2)(B). The statute is overinclusive because the driving conduct prohibited by the statute presents a serious potential risk of injury to others, but the nondriving conduct (merely "operating" a motor vehicle) does not pose such a risk. United States v. McCall, 439 F.3d 967, 971-73 (8th Cir. 2006) (en banc) (McCall I) (discussing the "operation" of a motor vehicle and noting it would include such nonviolent conduct as "the inebriated car owner who recognizes his impaired condition and turns on the engine of a parked vehicle to keep warm while sobering"); see also Cox v. Director of Revenue, 98 S.W.3d 548, 550 (Mo. 2003) (discussing the definition of "driving" as used in Chapter 577 of the Missouri Revised Statutes and holding the term encompasses both the concept of "driving" and "operating" a motor vehicle).

The crimes prohibited by § 577.010.1 are normally misdemeanors, but when a person *repeatedly* commits such misdemeanors he or she becomes subject to felony-level punishment under Mo. Rev. Stat. § 577.023, Missouri's Prior/Persistent Offender statute. The subsection listing the "intoxication-related traffic offense[s]" which

-9-

trigger felony-level punishment through repetition does not reference § 577.010 by name, but instead refers to the general title of the crime prohibited therein, i.e., "driving while intoxicated." It is clear, however, such reference applies equally to both the driving and nondriving crimes identified in § 577.010, and even though only one type of crime actually involves *driving* conduct which qualifies as violent behavior under § 924(e)(2)(B)(ii)'s "otherwise involves" clause. McCall I, 439 F.3d at 973.

Because the modified categorical approach still applies here, nothing about the Supreme Court's analysis in James changes the fact as to Mo. Rev. Stat. § 577.010.1 being an overinclusive statute. In this appeal, however, the Court concludes § 577.023.1(3)'s use of the title of the § 577.010.1 violation, i.e., "driving while intoxicated," cures the statute's overinclusiveness such that it should be interpreted as encompassing only the violent crime, that is, the crime involving actual driving conduct, unless the defendant can prove otherwise. The Court concludes the driving-related crime in § 577.010.1 should be construed as the statute's "dominant" offense when charged as a *felony* on the grounds that the list of "intoxication-related traffic offense[s]" set forth in § 577.023 focus on driving behavior.

I disagree. The primary focus of § 577.023 is not driving behavior, but rather *repetitive* behavior. Both the violent and nonviolent crimes identified in § 577.010.1 become felonies when an offender repeats them. Section 577.023 equally targets both the "driving" and "operating" aspects of § 577.010.1; one aspect is not secondary to the other merely because the crimes are both denominated as "driving while intoxicated." Nonviolent "operating" offenders become subject to felony-level punishment under § 577.023 the same way violent "driving" offenders become subject to such punishment. The mere repetition of nonviolent conduct covered by the statute does not transform it into violent conduct, yet that is the clear import of the Court's holding.

-10-

The claim as to the primary focus of § 577.023 being on driving behavior, rather than on repetitive behavior, is not supported by an examination of Missouri law. See, e.g., A.B. v. Frank, 657 S.W.2d 625, 628 (Mo. 1983) ("Clearly, the purpose of this Prior/Persistent Offender statute [§ 577.023] is to deter persons who have previously been convicted of driving while intoxicated from *repeating* their unlawful acts and to severely punish those who ignore the deterrent message.") (emphasis added). Prior to 1996, § 577.010.1 encompassed the elements of not just two, but *three* distinct intoxication-related traffic offenses: 1) driving while intoxicated, 2) operating a motor vehicle while intoxicated, and 3) being in actual physical control of a motor vehicle while intoxicated. In 1996, the statute was amended to delete the reference to being in actual physical control. See State v. Gibson, 122 S.W.3d 121, 126 (Mo. Ct. App. 2003) (discussing the history of the statute). McCall committed the two violations at issue here in May 1990 and December 1990, before the statute was amended. At that time, only one of the three offenses covered by the statute involved actual driving conduct, even though all three were designated as "driving while intoxicated."

Likewise, in 1990, § 577.023 targeted all three of those distinct "intoxication-related traffic offenses" for felony-level punishment for repeat offenses, not merely the one involving driving conduct. See Gibson, 122 S.W.3d at 128-30 (recognizing a conviction for "actual physical control" counted as an "intoxication-related traffic offense" prior to § 577.010's amendment, but did not count after the amendment). Thus, at the time McCall committed his offenses, § 577.023 targeted not only the intoxicated person who repeatedly engaged in actual driving conduct, but also the nonviolent person who repeatedly fell asleep in a parked car with his keys in his pocket. Section 577.023's mere use of the title of a crime set forth in an overinclusive statute does not somehow cure the statute's overinclusiveness, or make the one crime that corresponds most closely with the title – the violent "driving" crime – the statute's "dominant" offense to the exclusion of other nonviolent crimes also covered by the statute, and also targeted for felony-level punishment based on recidivism.

-11-

The government bears the initial burden of showing McCall committed three violent felonies. See United States v. Redding, 16 F.3d 298, 302 (8th Cir. 1994) ("For purposes of § 924(e)(1), the government must make an initial showing that a defendant has three prior convictions for violent felonies."). Because § 577.010.1 is an overinclusive statute, the government's burden is not satisfied unless it presents evidence showing the specific offenses McCall committed were of the violent variety rather than the nonviolent variety. If the government never satisfies its initial burden, the burden-shifting situation discussed in United States v. Painter, 400 F.3d 1111, 1114 (8th Cir. 2005), never arises.

The only evidence offered by the government to satisfy its initial burden of showing McCall's offenses involved violent "driving" conduct, rather than nonviolent conduct, consisted of 1) the bare charging documents alleging he committed felony violations of the overinclusive statute, and 2) docket sheets reflecting the entry of Alford[5] pleas to the overinclusive statute. The government argues the charging documents' mere reference to the location where the two crimes occurred, i.e., "upon Office Road" and "on Missouri State Highway 34," established the violent nature of McCall's behavior, claiming the references to location establish McCall was driving a vehicle on the roadways. Nonsense. Alleging *where* an offense occurred does not prove *what* the offense conduct was. The government offered no evidence to show the charging documents would not have contained the very same allegations regarding location for situations where vehicles were found parked on the shoulder of the road without the engine running, in an adjacent ditch, or even in an adjacent driveway or parking lot.[6] In short, the government did not present any evidence to establish

---

[5]North Carolina v. Alford, 400 U.S. 25, 39 (1970) (recognizing a defendant's right to plead guilty by acknowledging the government has enough evidence to convict while him still maintaining his innocence).

[6]Indeed, the presentence investigation report's (PSR) discussion of the December 1990 incident suggests the police had no direct evidence of actual driving behavior "on" or "upon" a roadway. The police found McCall's truck stuck in a ditch,

-12-

McCall's offenses involved actual driving conduct, rather than nonviolent "operation" or "actual physical control" conduct.

For the reasons stated, I respectfully dissent.

_____

---

not on the roadway, and McCall was not even inside the vehicle.  PSR at ¶ 44.  Of course, under the Supreme Court's modified categorical approach, the information contained in the PSR cannot be considered in determining whether McCall's offenses were violent felonies for purposes of § 924(e)(2)(B).