# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3193

_____

United States of America,            *
                                     *
            Plaintiff - Appellee,    *
                                     *   Appeal from the United States
      v.                             *   District Court for the Eastern
                                     *   District of Missouri.
John Peter Spudich,                  *
                                     *
            Defendant - Appellant.   *

_____

Submitted: April 10, 2007
Filed: January 4, 2008

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

      John Peter Spudich is before us again, this time appealing the 46-month sentence imposed by the district court[1] at resentencing. After oral argument, the Supreme Court issued its opinion in <u>James v. United States</u>, 550 U.S. ___, 127 S. Ct. 1586 (2007), and this court filed <u>United States v. McCall</u> (<u>McCall II</u>), 507 F.3d 670 (8th Cir. 2007). In light of <u>James</u> and <u>McCall II</u>, we affirm.

_____

      [1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

I.

Spudich pled guilty to unlawful possession of a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). During Spudich's first sentencing,[2] the district court found, over Spudich's objection, that his two prior Missouri felony driving while intoxicated (DWI) convictions were "crime[s] of violence" for purposes of United States Sentencing Guidelines section 2K2.1(a)(2),[3] resulting in an enhanced base offense level, and sentenced Spudich to a term of 50 months imprisonment. Spudich appealed, contending, among other things, that his two prior Missouri felony DWI convictions were not "crimes of violence" under the Guidelines. See United States v. Spudich (Spudich I), 443 F.3d 986, 986 (8th Cir. 2006) (per curiam).

---

[2]The Presentence Investigation Report (PSR) concluded that Spudich's base offense level was 24 pursuant to United States Sentencing Guidelines section 2K2.1(a)(2) because Spudich's two prior driving while intoxicated (DWI) felony convictions under Missouri law were both crimes of violence within the meaning of section 4B1.2(a). After applying a three-level downward adjustment for acceptance of responsibility, the PSR set Spudich's total offense level at 21. Spudich's total offense level coupled with his criminal history category of III resulted in an advisory Guidelines sentence range of 46 to 57 months.

[3]Guideline section 2K2.1 applies to offenses involving the unlawful possession of firearms and sets the base offense level at 12. However, section 2K2.1(a)(2) provides that the base offense level is "24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(2). Thus, the application of section 2K2.1(a)(2) amounts to a 12-level enhancement. For purposes of section 2K2.1, "crime of violence" has the meaning given that term in section 4B1.2(a). USSG § 2K2.1, comment. (n.1). Under section 4B1.2(a)(2), crimes of violence include offenses that "involve[] conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2).

Recognizing that *driving* while intoxicated is a crime of violence for purposes of Guidelines section 2K2.1 but that an individual may commit the Missouri crime of felony DWI through non-driving conduct such that it is not a crime of violence,[4] we vacated Spudich's original sentence because the district court found that Spudich's felony DWI convictions were crimes of violence based on the Presentence Investigation Report (PSR), which did "not provide sufficient information from acceptable sources to determine . . . that Spudich was *driving* while intoxicated." Spudich I, 443 F.3d at 987. We remanded for resentencing, instructing that the government could offer evidence to establish that Spudich was actually *driving* while intoxicated such that his felony DWI convictions qualified as crimes of violence for sentence enhancement purposes. Id.

At resentencing, the district court determined that the government established, by way of the charging documents, that Spudich's felony DWI convictions actually involved *driving* while intoxicated such that those offenses were "crime[s] of violence," subjecting Spudich to a base offense level enhancement pursuant to section

---

4

> [T]he Supreme Court of Missouri has construed the statutory term "operates" to include both driving a vehicle and merely causing the vehicle to function by starting its engine. See Cox v. Director of Revenue, 98 S.W.3d 548, 550-51 (Mo. 2003). This makes the felony DWI offense overinclusive, for purposes of the "otherwise involves" provision in § 924(e)(2)(B)(ii), because it criminalizes non-driving conduct that does not necessarily present a serious risk of physical injury to others. For example, the inebriated car owner who recognizes his impaired condition and turns on the engine of a parked vehicle to keep warm while sobering is not risking physical harm to others but is violating the Missouri DWI statutes as construed. Thus, . . . not every felony DWI conviction in Missouri is a violent felony under [the Armed Career Criminal Act's (ACCA's) residual provision].

United States v. McCall (McCall I), 439 F.3d 967, 973 (8th Cir. 2006) (en banc) (footnote omitted).

-3-

2K2.1(a)(2), and sentenced Spudich to 46 months imprisonment. Spudich again appeals his sentence, contending that the district erred because the government's proof at resentencing established only that he "operated" a motor vehicle, failing to resolve whether his felony DWI convictions rested on the fact that he was *driving* while intoxicated.

## II.

We consider *de novo* whether the district court erred in finding that Spudich's Missouri felony DWI convictions were crimes of violence for purposes of section 2K2.1(a)(2). See United States v. Lockwood, 446 F.3d 825, 827 (8th Cir. 2006) ("We review *de novo* the district court's use of prior convictions for sentence enhancement purposes.").

## III.

The focus of this appeal is the term "crime of violence" defined by the Guidelines as "any offense . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). However, in order to construe this term, we look to the Supreme Court's and this court's interpretation of "violent felony"[5] contained in the Armed Career Criminal Act (ACCA), 18 U.S.C.

---

[5]The ACCA's 15-year mandatory minimum applies "[i]n the case of a person who violates section 922(g) of this title [the felon in possession of a firearm provision] and has three prior convictions . . . for a *violent felony* or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The ACCA defines a "violent felony" as

> [A]ny crime punishable by imprisonment for a term exceeding one year
> . . . that–(I) has as an element the use, attempted use, or threatened use
> of physical force against the person of another; or (ii) is burglary, arson,
> or extortion, involves use of explosives, *or otherwise involves conduct
> that presents a serious potential risk of physical injury to another.*

§ 924(e). More specifically, we consider the ACCA's residual provision, the portion of section 924(e)(2)(B) clause (ii) which encompasses as a "violent felony" any offense which "presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), that was central in both James and McCall II. This provision is relevant here because its language is "nearly identical to the definition" of "crime of violence" for purposes of Guidelines section 2K2.1(a)(2). Spudich I, 443 F.3d at 987; see James, 127 S. Ct. at 1596 (stating that the Guidelines "definition of a predicate 'crime of violence' closely tracks ACCA's definition of 'violent felony'"). Further, this court "generally appl[ies] the same analysis to both terms." Spudich I, 443 F.3d at 987. Thus, the same considerations that the James and McCall II Courts applied in determining whether a prior state offense constituted a "violent felony" under the ACCA's residual provision govern whether such an offense is a "crime of violence" under the Guidelines. Id.; see United States v. Wells, 469 F.3d 716, 721 (8th Cir. 2006) ("Our holding in McCall applied to the definition of "crime of violence" under 18 U.S.C. § 924(e), but this holding also applies to the definition of crime of violence under [section] 2K2.1(a)(2) because the definitions under these statutes are 'nearly identical.'").

Prior to James, the Supreme Court addressed the manner in which a sentencing court determines whether a defendant's prior conviction constitutes a violent felony under the ACCA. See Shepard v. United States, 544 U.S. 13 (2005); Taylor v. United States, 495 U.S. 575 (1990). In Shepard and Taylor, the Court examined whether a burglary conviction pursuant to state law that defined the offense more broadly than the generic offense of burglary,[6] one of the enumerated offenses in section

_____

Id. § 924(e)(2)(B) (emphasis added).

[6]The Supreme Court found "that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." Taylor v. United States, 495 U.S. 575, 598 (1990) (citation omitted). Thus, the Court "conclude[d] that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label,

924(e)(2)(B) clause (ii), constituted a violent felony. See Shepard, 544 U.S. at 17 ("In this case, the offenses charged in state complaints were broader than generic burglary . . . ."); Taylor, 495 U.S. at 599-600 ("We therefore must address the question whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary."). Because the "ACCA generally prohibits the later court from delving into particular facts disclosed by the record of conviction," Shepard, 544 U.S. at 17, both Taylor (jury verdicts) and Shepard (guilty pleas), applied what the Supreme Court termed a "formal categorical approach," Taylor, 495 U.S. at 600, "leaving the [sentencing] court normally to 'look only to the fact of conviction and the statutory definition of the prior offense.'" Shepard, 544 U.S. at 17 (quoting Taylor, 495 U.S. at 602).

However, both Taylor and Shepard recognize "an exception to this 'categorical approach' . . . for 'a narrow range of cases'" where a state defines an offense more broadly than the generic enumerated offense. Shepard, 544 U.S. at 17 (quoting Taylor, 495 U.S. at 602). Where the prior conviction stems from a jury verdict, the sentencing court may look to "the indictment or information and jury instructions" to determine if the jury was "actually required to find all the elements of [the] generic [offense]." Taylor, 495 U.S. at 602. With regard to guilty pleas, the court "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information," which must show that the defendant "necessarily admitted elements of the generic offense." Shepard, 544 U.S. at 26. This court has termed the Supreme Court's approach in Taylor and Shepard the "modified categorical approach." See United States v. McCall (McCall I), 439 F.3d 967, 974 (8th Cir. 2006) (en banc).

having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 599.

James involved a prior conviction for attempted burglary as defined by Florida law, and the Supreme Court examined whether such an offense constituted a violent felony under the ACCA's residual provision. 127 S. Ct. at 1590-91. However, unlike Taylor and Shepard which focused on "the specific crimes enumerated in clause (ii)," James examines "the scope of [the ACCA's] § 924(e)(2)(B)(ii)'s residual provision" that is "broad" with "expansive phrasing." 127 S. Ct. at 1591-93 (citing Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80 (2002)). In resolving the issue before it, the James Court, relying on both Taylor and Shepard, utilized "the '"categorical approach . . . look[ing] only to the fact of conviction and the statutory definition of the prior offense,'" and . . . not . . . the '"particular facts disclosed by the record of conviction'" in determining '"whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of [the] particular offender."'" James, 127 S. Ct. at 1593-94 (quoting Shepard, 544 U.S. at 17, in turn quoting Taylor, 495 U.S. at 602). Significantly, the James Court did not mention the narrow exception to the categorical approach outlined in Taylor and Shepard that was discussed in the preceding analysis. Thus, James clarified the approach that the federal courts are to take in ascertaining whether an offense qualifies as a violent felony under the ACCA's residual provision as: "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." 127 S. Ct. at 1597. Applying this standard, the James Court determined that attempted burglary under Florida law is a violent felony under the ACCA's residual provision. Id. at 1597-98.

When faced with the same prior offense at issue in this case, a Missouri felony DWI conviction, McCall II applied the categorical approach articulated by the Supreme Court in James and found that "a charging paper alleging the *felony* offense of driving while intoxicated should be construed as referring to the dominant offense of *driving* while intoxicated," McCall II, 507 F.3d at 674, which is a violent felony for purposes of the ACCA's residual provision. See McCall I, 439 F.3d at 972. The McCall II Court went on to find that, because "a guilty plea to [this charge] without more, raises no inference that the offense was not a violent felony," and the record in

McCall II did not offer any indicia that the defendant was not driving at the time he committed the felony DWI, the district court properly concluded that McCall's guilty pleas to the offense constituted violent felonies. 507 F.3d at 675.

Because, as shown in the preceding analysis, this court construes "crime of violence" under the Guidelines in accordance with its interpretation of "violent felony" pursuant to the ACCA, James and McCall II establish that the overinclusive nature of the Missouri statute that caused the Spudich I Court concern, 443 F.3d at 987, does not preclude a finding that a Missouri felony DWI conviction is a crime of violence for purposes of section 2K2.1(a)(2). See James, 127 S. Ct. at 1597; McCall II, 507 F.3d at 674-75. The James Court acknowledged that "[o]ne could . . . imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone" but still found that the offense was a violent felony under the ACCA's residual provision because the

> ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)'s residual provision speaks in terms of a "potential risk." . . .We do not view [Taylor's categorical] approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . . One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . . As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision.

James, 127 S. Ct. at 1597 (internal citation omitted). Furthermore, McCall II acknowledged the overinclusive nature of the Missouri felony DWI offense but determined that this does not disqualify the offense from falling within the ACCA's residual provision under James's categorical approach because "[t]he primary focus" of this offense "is driving a vehicle" such that "[t]he plain meaning of a felony charge of 'driving while intoxicated' is that the defendant operated the vehicle in that condition by moving it, thereby creating the potential risk of serious physical injury

-8-

to another . . . ." McCall II, 507 F.3d at 675. Accordingly, McCall II's holding that a felony DWI conviction pursuant to Missouri law is a violent felony under the ACCA compels our conclusion that the same offense is a crime of violence for purposes of section 2K2.1(a)(2). See James, 127 S. Ct. at 1596 (finding the United States Sentencing Commission's determination that attempt offenses can constitute crimes of violence persuasive in determining that such offenses could serve as violent felonies under the ACCA); see also United States v. Hessman, 493 F.3d 977, 982 (8th Cir. 2007) (recognizing that only the en banc court can overrule circuit precedent).

Furthermore, the record in this case mirrors that of McCall II. There, with regard to the two convictions in dispute, "[t]he first information charged that McCall 'committed the Class D felony of Driving While Intoxicated . . . upon Office Road at Goose Creek . . . .' The second charged that he 'committed the Class D felony of driving while intoxicated . . . on Missouri State Highway 34, west of Marble Hill . . . .'" McCall II, 507 F.3d at 675. Here, the first information charged that Spudich "committed the class D felony of Driving While Intoxicated Persistent Offender . . . upon Missouri Highway 67 North . . . ." The second charged that he "committed the class D felony of driving while intoxicated . . . on the ramp from Dorsett to southbound Highway I-270 . . . ." Thus, the factual descriptions in the charging papers in this case and McCall II are extremely similar in that all four use the words "on" or "upon" in connection with a specific public roadway. Moreover, as in McCall II, both of Spudich's state court charging documents reference the felony statute, Mo. Rev. Stat. § 577.023.1(3) ("An 'intoxication-related traffic offense' is driving while intoxicated, driving with excessive blood alcohol content . . . ."), as well as the driving-while-intoxicated statute, Mo. Rev. Stat. § 577.010 ("A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition"). See id. Finally, as in McCall II, nothing in the record indicates that Spudich committed his prior two felony DWIs by merely "operating" his vehicle, for example, that Spudich was sitting in the car asleep with the engine running. See id. Thus, Spudich's "guilty plea to the felony charge of 'driving while intoxicated,' without more, raises no inference that the offense was not

a [crime of violence]." See id.; see also United States v. Painter, 400 F.3d 1111, 1114 (8th Cir. 2005) (in evaluating California burglary convictions for purposes of the ACCA, "[w]hen the charging paper charge[s] generic burglarly–unlawful entry into a building to commit a crime–the conviction is a violent felony for purposes of 924(e) unless a plea agreement or plea colloquy establishes that the defendant pleaded guilty to an offense that was not generic burglary" such that the onus is on "the defendant [to] lay the factual predicate for that issue in his guilty plea to the [state] court")). Therefore, Spudich's sole contention on appeal has been foreclosed by McCall II.

IV.

Accordingly, we affirm Spudich's sentence.

_____