# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 08-1335

—————

United States of America,

   Plaintiff – Appellee,

v.

Graeme Pierson,

   Defendant – Appellant.

Appeal from the United States
District Court for the
Southern District of Iowa.

—————

Submitted: September 24, 2008
Filed: October 20, 2008

—————

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

—————

MURPHY, Circuit Judge.

Graeme Pierson was charged with attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and attempting to induce a child to engage in criminal sexual activities, in violation of 18 U.S.C. § 2422(b). Pierson was convicted by a jury on both counts and sentenced to 300 months imprisonment by the district court.[1] On appeal Pierson challenges the sufficiency of the evidence, the admission

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

at trial of a prior conviction for indecent contact with a child, a sentencing enhancement under U.S.S.G. § 4B1.5 for repeat and dangerous offenders, and application of a mandatory minimum sentence under 18 U.S.C. § 2251(e) based on a qualifying prior conviction under state law. We affirm.

I.

Lieutenant Kent Smock of the Iowa Internet Crimes Against Children Task Force of the Black Hawk County, Iowa Sheriff's Office established the undercover profile of a fictional fourteen year old Iowa girl with the screen name *brenda_j_2011*. Acting with that identity, he entered a Yahoo internet chat room for romance seekers in the state of Iowa. On February, 9, 2007, the undercover profile was contacted by an individual, later determined to be Graeme Pierson, using the screen name *Modelman_Matthew2006*. In response to questioning by Pierson, *brenda_j_2011* indicated that she was a fourteen year old girl. After Pierson requested a picture of her, Lieutenant Smock sent him several photographs of a female officer taken when she was approximately thirteen years old. Pierson responded that *brenda_j_2011* was cute, mentioned that he was looking for a girlfriend, and asked the undercover profile to have sex with him. Pierson was forty four years old at the time.

Over the course of the following several months, Pierson communicated regularly with *brenda_j_2011* in chat rooms, through instant messaging, and offline via cellular telephone text messaging. The conversations were invariably sexually explicit and typically revolved around Pierson's attempt to induce the undercover profile to have sexual relations with him and to perform graphic sexual acts for transmission to him over the internet.

In order to achieve this goal, Pierson relied on a coterie of distinct internet personas, styling himself variously as *Modelman_Matthew2006* (a handsome nineteen year old male), *gpierson06* (*Modelman_Matthew2006*'s terminally ill and love starved

thirty six year old brother), *strictartist05* (a twenty year old female), and *jdepp2000* (ostensibly the actor Johnny Depp).

Pierson initially utilized his teenage persona, *Modelman_Matthew2006*, to make contact with *brenda_j_2011*, earn her trust, and determine whether she was open to sexual relations with an adult. Satisfied that she was willing, Pierson needed to introduce an older persona into the mix in order to have sex with *brenda_j_2011* because *Modelman_Matthew2006* was supposedly nineteen while Pierson was forty four. At this point Pierson introduced *gpierson06*, *Modelman's* adopted thirty six year old brother who supposedly was dying of cancer and desperately in need of the succor only sex could provide. *Gpierson06* then began communicating regularly with the undercover profile. In his efforts to procure sex and personal pornography from *brenda_j_2011*, *gpierson06* depended on both natural compassion for the terminally ill and cold hard cash. For instance, *gpierson06* informed *brenda_j_2011* that if she were willing to provide him with sex and explicit imagery, he would assist her in obtaining a job as a model where she might earn as much as $50,000.

*Strictartist05,* Pierson's multi purpose female persona, first approached *brenda_j_2011* in the guise of an undercover officer on the hunt for pedophiles. As *strictartist05,* Pierson asked *brenda_j_2011* if she too was a police officer. When the undercover profile reported this to *gpierson06* and threatened to terminate their relationship for fear of parental punishment, Pierson responded that *strictartist05* was a friend who was merely attempting to confirm that *brenda_j_2011* was not a law enforcement officer. Later, satisfied that *brenda_j_2011* was a minor, Pierson employed *strictartist05* to attempt to persuade *brenda_j_2011* to have sex with *gpierson06.* *Strictartist05* shared fictional tales of her own underage sexual relationship with the adult *gpierson06.* These relations, according to *strictartist05*, led to a lucrative career as a model. Finally, *jdepp2000* contacted *brenda_j_2011*. Pierson, posing as the international film star, explained that he too had befriended *strictartist05* through *gpierson06.* *Jdepp2000* asserted that his friendship and untold riches awaited *brenda_j_2011* if she would only have sex with *gpierson06.*

-3-

After Pierson mailed twenty seven dollars to the undercover profile for the purpose of purchasing a webcam for her to use in a sexually explicit performance, agents of the United States Postal Inspection Service obtained search and arrest warrants and arrested him on May 4, 2007. Pierson was read his Miranda rights, signed a waiver of those rights, and agreed to speak with the agents. During this interview, Pierson made a series of damaging admissions. He admitted to using the *Modelman_Matthew2006, gpierson06,* and *strictartist05* screen names. He admitted to engaging in sexually explicit communications with the undercover profile. He admitted to sending money to the undercover profile for the purpose of purchasing a webcam. He admitted that he wanted the undercover profile to transmit nude pictures of herself to him via the webcam. He admitted that he would be sexually aroused by viewing explicit photographs and moving images of a fourteen year old girl. He admitted attempting to set up at least two meetings with the undercover profile. Finally, Pierson maintained that while he had initially doubted whether the undercover profile was actually fourteen years old, he had come to believe that she was a minor over the preceding several weeks.

At trial Pierson attempted to paint a more benign portrait. He described the internet chat rooms in which he spent his time as a virtual playground where visitors indulged their fantasies through masquerade. The corpulent described themselves as svelte. The old described themselves as young. Indeed, Pierson admitted at trial that he used the *strictartist05* screen name to appear to be a female. He also testified that he had once entered into an online relationship with an individual who purported to be a minor only to later discover that the object of his attention was middle aged. Pierson asserted that he therefore believed throughout the course of their contact that the undercover profile was an adult imitating a child. At one point Pierson conducted research based upon identifying information provided by the undercover profile and came to believe that he was communicating with a forty year old woman rather than a fourteen year old girl. Pierson played along nonetheless he said because the thought of engaging in sexual activity with a fourteen year old was exciting to him. Although Pierson denied that he would ever act on his desire to engage in sexual contact with

a minor, the government introduced evidence prior to the conclusion of trial that he had previously been convicted in Iowa for indecent contact with a child.

The jury found Pierson guilty of one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of attempting to induce a child to engage in sexually explicit activities, in violation of 18 U.S.C. § 2422(b). At sentencing the district court found Pierson eligible for the U.S.S.G. § 4B1.5 enhancement for repeat and dangerous offenders and the mandatory minimum sentence under 18 U.S.C. § 2251(e) for offenders with a qualifying prior conviction under state law.

Pursuant to U.S.S.G. § 2G2.1, which covers offenses involving the sexual exploitation of a minor, Pierson's base offense level was 32. Because the offense involved a minor between the age of twelve and sixteen, Pierson's offense level was increased by two pursuant to § 2G2.1(b)(1)(B). Because the offense involved the knowing misrepresentation of the participant's identity with the aid of a computer in order to persuade a minor to engage in sexually explicit conduct, Pierson's offense level was increased by a further two levels. Finally, because Pierson is a repeat and dangerous sex offender against minors under § 4B1.5, his offense level was increased one additional level to 37 and his criminal history category was increased from I to V. With a total offense level of 37 and a criminal history category of V, Pierson's guideline sentencing range was 324 to 405 months.

The mandatory minimum sentence for attempted production of child pornography under 18 U.S.C. § 2251(a) is fifteen years, but an individual with a prior qualifying conviction is subject to a mandatory minimum sentence of twenty five years or 300 months under 18 U.S.C. § 2251(e). A conviction under 18 U.S.C. § 2422(b) for attempting to induce a child to engage in criminal sexual activities carries a mandatory minimum sentence of ten years or 120 months. The government did not object to a below guideline sentence. The district court sentenced Pierson to 300 months or twenty five years on Count I and ten years on Count II, to be served concurrently.

On appeal, Pierson challenges the sufficiency of the evidence, the admission at trial of his prior conviction for indecent contact with a child, and his eligibility for both the § 4B1.5 enhancement and the statutory mandatory minimum under 18 U.S.C. § 2251(e).

## II.

Pierson first contends that the record contains insufficient evidence to support his convictions, arguing that no reasonable jury could find beyond a reasonable doubt that the elements of Counts I and II were satisfied. In determining whether sufficient evidence exists to support a conviction, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). Evidence supporting conviction "need not preclude every outcome other than guilty." United States v. Ramirez, 362 F.3d 521, 524 (8th Cir. 2004). Moreover, "[t]his standard is a strict one, and a jury verdict should not be overturned lightly." United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992).

In order to convict a defendant of the crime of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), as charged in Count I, the government must prove the following elements beyond a reasonable doubt: (1) that the defendant believed during the time period alleged in the indictment that the child named in the indictment was under the age of eighteen; (2) that the defendant attempted to use, persuade, induce, entice, or coerce that child to engage in sexually explicit conduct as defined in 18 U.S.C. § 2256(2); (3) that the defendant voluntarily and intentionally engaged in this behavior for the purpose of producing a visual depiction of such conduct; and (4) that the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce.

Since Pierson does not dispute element four, the question is only whether a reasonable jury could find that the government proved elements one through three beyond a reasonable doubt. In respect to element two, there was evidence that Pierson attempted on numerous occasions to persuade the undercover profile to engage in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), for transmission to him via a webcam. The evidence showed that Pierson requested naked photos of the undercover profile, asked if she would perform sexually explicit acts in front of a webcam and transmit the images to him over the internet, requested her address so that he could send money to purchase the webcam, and offered to pay her if she would convince her twelve and thirteen year old friends to pose nude in front of the webcam. The government therefore carried its burden on element two. Element three requires little comment. Since there was no evidence that Pierson was coerced into requesting these sexually explicit depictions or was actually seeking something altogether different, the government met its burden on the third element.

We also conclude that a reasonable jury could have found that the government proved beyond a reasonable doubt that Pierson believed that the undercover profile was a minor. Pierson relies primarily on the argument that his personal internet research and thorough questioning of the undercover profile show that no rational trier of fact could have found beyond a reasonable doubt that he believed he was communicating with a minor. There was evidence that after Pierson requested a telephone number from the undercover profile, he discovered that the number had at one time been registered to a forty year old woman who was coincidentally named Brenda. Pierson repeatedly quizzed the undercover profile about her biography in an effort to determine whether she was actually fourteen. The jury could find from the evidence at trial that Pierson's attempts to determine the age of the undercover profile were designed not only to confirm that he was not communicating with an undercover officer, but also to confirm that he was communicating with a minor.

Moreover, there was credible evidence that Pierson believed that the undercover profile was a minor female. During one online chat with the undercover profile

Pierson stated that he believed that she was a fourteen year old female. During another online chat Pierson stated "I know your [sic] 13 and in 8th grade right? I do not care if you are I still like you okay? Please just tell me the truth from now on please. I am going to like you and help you model for real. I am not going to get you in any trouble just please do not get me in any trouble okay?" Pierson also told the Postal Inspector after his arrest that during "the last two weeks I was starting to think she was fourteen." Pierson was also wary of meeting with the undercover profile before she transmitted live images of herself to him via webcam. The following exchange is illustrative:

> Undercover Profile: r u ever gonna come c me since u aint sick no more?
> Pierson: YES after I see you nude on the cam.
> Undercover Profile: k.
> Pierson: Then I know your safe okay?
> Undercover Profile: huh?
> Pierson: If I see you nude on the cam I will know yur real.

These facts, when viewed in the light most favorable to the prosecution, would allow a rational trier of fact to find beyond a reasonable doubt that the defendant committed the essential elements of the offense.

In order to convict a defendant of the crime of attempting to induce a child to engage in criminal sexual activities, in violation of 18 U.S.C. § 2422(b), as charged in Count II, the government must prove the following elements beyond a reasonable doubt: (1) that the defendant used a facility of interstate commerce, such as the internet or the telephone system; (2) that the defendant knowingly used the facility of interstate commerce with the intent to persuade or entice a person to engage in illegal sexual activity; and (3) that the defendant believed that the person he sought to persuade or entice was under the age of eighteen. The government need not prove that the defendant intended to participate in a physical sexual act. It is sufficient for the government to prove that the defendant intended to persuade or entice a minor to engage in illegal sexual activity. Factual impossibility is not a defense to the charge.

We conclude that the government has carried its burden in Count II. Pierson does not dispute element one. The same evidence that was relevant on Count I for elements two and three of the crime of attempted production of child pornography is relevant to the second element of attempting to induce a child to engage in criminal sexual activities, and the evidence applying to the first element of the crime charged in Count I is relevant to the third element of the crime of attempting to induce a child to engage in criminal sexual activities.

## III.

Pierson next contends that the district court abused its discretion in permitting the government to cross examine him at trial about his prior conviction for indecent contact with a child. A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Cook, 454 F.3d 938, 940 (8th Cir. 2006).

The district court admitted the evidence under Federal Rule of Evidence 404(b). Under Rule 404(b), evidence of other crimes may not be offered to prove criminal propensity but it is admissible to prove motive, intent, preparation, plan, knowledge, and absence of mistake or accident. United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). "[W]e construe Rule 404(b) as a rule of inclusion and have frequently upheld the admission of prior ... convictions in cases where the defendant denied committing the charged ... offense." Cook, 454 F.3d at 941. Rule 404(b) is of course subject to the balancing requirement found in Rule 403 which requires the court to balance the probative value of evidence with its prejudice. *Id.* Thus, although "all Rule 404(b) evidence is inherently prejudicial, the test [for exclusion] under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *Id.* (emphasis in the original). Moreover, even unfairly prejudicial evidence is generally admissible if the person against whom the prejudicial evidence was offered opened the door to its admission by offering related favorable evidence. United States v. Senffner, 280 F.3d 755, 763 (7th Cir. 2002).

Prior to trial Pierson moved in limine to exclude his prior conviction for indecent contact with a child pursuant to Rules 403 and 609. The government informed the district court that it did not intend to utilize evidence of the prior conviction in its case in chief, but reserved the right to revisit the issue if Pierson testified. The district court granted the motion with respect to the government's case in chief, but indicated that it would reconsider the issue if Pierson testified.

At the close of the government's case, the district court revisited the issue after confirming that Pierson intended to testify. Relying on Rule 404(b), the government argued that the prior conviction, despite the fact that it was twenty years old, was relevant based on the similarity between the conviction and the charges in the current indictment. In determining the probative value of prior crimes, courts consider the similarity between the charged and uncharged acts and the remoteness of the other act in terms of time. Johnson, 439 F.3d at 952. The government also argued that despite the risk of unfair prejudice, the evidence of the prior conviction was relevant to show intent, lack of mistake, plan, and preparation. Although the district court considered that the prior conviction "would be extremely prejudicial," it concluded that it might become relevant depending on the nature of Pierson's testimony. During direct, Pierson testified in the following manner:

> Q. Are you denying that [discussing having sex with a fourteen year old girl] excites you?
> A. No.
> Q. And after that you still tried to – at least on the internet did you still try to set up meetings with her?
> A. We tried to set up two.
> Q. And did that ever occur?
> A. No.
> Q. Why didn't that occur?
> A. I had no interest in meeting her. And plus I knew it wasn't a fourteen year old, and it was just on the computer.

The government contends that this testimony opened the door for the admission of his prior conviction and that Pierson opened it further through the following exchange on his cross examination:

Q. So you wouldn't want to have any sexual contact with young girls?
A. In person, no, sir.
Q. And you're sure about that?
A. Yes, sir.
Q. And that's never sexually – you've never been sexually attracted to physically have contact –
A. Yes, I have been; but that doesn't mean – in my heart I don't believe I want to.
Q. That means you wouldn't ever act on it; correct?
A. That's correct.

After this exchange, the trial court ruled that his prior conviction for indecent contact with a child was admissible. Pierson then answered in the affirmative when asked if he had previously been convicted of indecent contact with a child. At the close of evidence the district court made a record to show that Pierson's denials had accentuated the relevancy of his prior conviction for purposes of the Rule 403 balancing test.

We conclude that Pierson's testimony on direct and cross opened the door for admission of his prior conviction and made it relevant. As the Seventh Circuit has explained, "a party cannot be permitted on the one hand to introduce evidence that appears favorable to his argument and then complain, after the circumstances are fully developed, because the evidence becomes detrimental to his cause." Senffner, 280 F.3d at 763. Here, Pierson denied on both direct and cross examination that he would actually carry out his fantasy of engaging in sexual relations with a minor. This self serving testimony opened the door to the admission of his prior conviction for indecent contact with a child.

A trial court has significant discretion in conducting the Rule 403 balancing test. United States v. Ruiz, 412 F.3d 871, 881 (8th Cir. 2005). Reversal is appropriate only if the trial court failed to engage in the required balancing process or when it is impossible to determine from the record whether it did or not. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 403.02[1][b] (2d ed. 2008). It is sufficient if we can discern from the record that the trial court performed the requisite balancing. *Id.* Here, there is no doubt that the district court performed the appropriate 403 balancing test when it admitted the 404(b) evidence. We conclude that the district court did not abuse its discretion by admitting evidence of Pierson's prior conviction.

IV.

Pierson finally contends that the district court erred in applying a mandatory minimum sentence under 18 U.S.C. § 2251(e) for offenders with a qualifying prior conviction under state law and finding him eligible for a § 4B1.5 guideline enhancement as a repeat and dangerous offender. We review de novo a district court's application of an enhancement based upon a prior conviction. United States v. Stallings, 301 F.3d 919, 920 (8th Cir. 2002).

A 25 year mandatory minimum sentence applies if a defendant has violated 18 U.S.C. § 2251(a) and has a prior conviction under state law that qualifies under 18 U.S.C. § 2244(a)(3) as "abusive sexual contact" involving a minor. The § 4B1.5 guideline enhancement for repeat and dangerous offenders applies if the instant offense is a qualifying sex crime committed after being convicted of a certain type of sex offense as defined by federal law. One such predicate offense is abusive sexual contact. Under federal law abusive sexual contact includes in relevant part the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

In 1987 Pierson pled guilty to and was convicted of indecent contact with a child in violation of Iowa Code § 709.12. The Iowa statute provides in relevant part that:

> A person eighteen years of age or older is upon conviction guilty of an aggravated misdemeanor if the person commits any of the following acts with a child ... for the purpose of arousing or satisfying the sexual desires of either of them:
> 1. Fondle or touch the ... breast of the child.
> 2. Touch the clothing covering the immediate area of the ... breast of the child.
> 3. Solicit or permit a child to fondle or touch the inner thigh, groin, buttock, anus, or breast of the person.
> 4. Solicit a child to engage in any act prohibited under section 709.8....

To determine whether a prior offense qualifies as a predicate offense for the purpose of a statutory mandatory minimum or a sentencing enhancement, federal courts employ a "formal categorical approach" which requires that the sentencing court "look only to the fact of conviction and the statutory definition of the prior offense." United States v. Spudich, 510 F.3d 834, 837 (8th Cir. 2008) (quoting Shepard v. United States, 544 U.S. 13, 17 (2005)). However, where as here, the prior offense was committed in a separate jurisdiction in which the offense is defined more broadly than the "generic offense" enumerated in the current prosecution, federal courts employ a "modified categorical approach." Spudich, 510 F.3d at 837. With regard to guilty pleas under this analysis, the Supreme Court has held that:

> [I]nquiry ... to determine whether a plea of guilty ... defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. Shepard, 544 U.S. at 26.

Section 709.12 of the Iowa Code is defined more broadly than the generic offense of abusive sexual contact. A conviction under subsections 1 or 2 of § 709.12 would qualify as a prior conviction for abusive sexual contact subjecting Pierson to a § 2251(e) 25 year mandatory minimum sentence and a § 4B1.5 enhancement. A conviction under subsections 3 or 4 would not, however. In determining whether the mandatory minimum and sentencing enhancement should apply, we must confine our review to the terms of the charging document, the terms of a plea agreement, a colloquy between the judge and the defendant, or to a comparable record which indicates that the defendant admitted elements of the generic offense. Spudich, 510 F.3d at 837.

There is no plea agreement or transcribed colloquy between the judge and the defendant in the record. Instead, the government relied at sentencing upon two exhibits. The first is the trial information (part of which includes a complaint and judgment entry). The second is the final disposition report (part of which includes witness summaries). The trial information qualifies as a charging document under Shepard and Spudich. While the final disposition report may qualify as a comparable judicial record under Shepard and Spudich, we need not decide that issue since the trial information is sufficient for our inquiry.

The trial information indicates that Pierson was accused of indecent contact with a child in violation of § 709.12, based upon the allegation that the defendant "fondle[d] and/or touch[ed] the breast of a child for the purpose of arousing or satisfying his sexual desires." Because this charging document narrowed an over inclusive Iowa statute, Shepard did not require the government to produce further support. The charging document is sufficient evidence to support a finding that Pierson was convicted of the generic offense. See United States v. Vasquez-Garcia, 449 F.3d 870, 873 (8th Cir. 2006). We conclude that Pierson's prior conviction is a qualifying predicate offense for the purpose of applying both the § 4B1.5 enhancement for repeat and dangerous offenders and the mandatory minimum

-14-

sentence required under 18 U.S.C. § 2251(e) for offenders with a qualifying prior conviction under state law.

## V.

Accordingly, we affirm Pierson's convictions and sentence.

_____