**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RANDE BRIAN ISABELLA,

     Defendant - Appellant.

No. 17-1197

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CR-00207-CMA-1)**
_____

Ronald Gainor, Longmont, Colorado, for Defendant - Appellant.

J. Bishop Grewell, Assistant U.S. Attorney, (Robert C. Troyer, United States Attorney with him on the brief) Denver, Colorado, for Plaintiff - Appellee.
_____

Before **HARTZ**, **MATHESON**, and **EID**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Rande Isabella was convicted under 18 U.S.C. § 2422(b) of persuading and attempting to persuade S.F., a 14-year-old girl, to "engage . . . in any sexual activity for which any person can be charged with a criminal offense" (Count 1) and under 18 U.S.C. § 2251(a) and (e) of attempting to persuade S.F. to produce child pornography (Count 2).

On appeal, Mr. Isabella argues (1) the evidence was insufficient to sustain his convictions; (2) the district court made six improper evidentiary rulings; and (3) his convictions and sentences under §§ 2422(b) and 2251(a) and (e) violate the Double Jeopardy Clause. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

## I. BACKGROUND

### A. *Factual Background*

In September 2013, Mr. Isabella began chatting with S.F., a 14-year-old high school student, through a mobile application called Minus. For the next three months, they communicated via cellular telephone, a messaging application called Kik, and e-mail. Mr. Isabella and S.F. developed a flirtatious relationship and called each other boyfriend and girlfriend. Mr. Isabella used pet names like "baby," "angel," and "princess" when communicating with S.F. They chatted about sex and sent each other pictures, including nude pictures of themselves. During the early period of their communications, they chatted nearly every day. When S.F.'s mother discovered the sexual chats and pictures, she contacted the police, who obtained a search warrant for Mr. Isabella's home. The officers seized Mr. Isabella's phone and extracted messages and images from it. After executing the search, authorities arrested Mr. Isabella.

---

[1] We caution the reader that the facts of this case, especially the communications between Mr. Isabella and S.F., are graphically and disturbingly sexual in nature. Because Mr. Isabella's convictions were for sexual crimes and because he is challenging the sufficiency of the evidence on appeal, we recount the evidence of his interactions to evaluate whether a reasonable jury could have found him guilty beyond a reasonable doubt and to provide an explanation of our decision.

## B. *The Indictment*

A federal grand jury indicted Mr. Isabella on four counts, two concerning his interactions with S.F. (Counts 1 and 2), and two based on his interactions with an undercover officer posing as a minor (Counts 3 and 4). The charges were:

Count 1: Persuading and attempting to persuade S.F. to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).

Count 2: Attempting to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e), in his interactions with S.F.[2]

Count 3: Persuading and attempting to persuade an undercover officer posing as a minor to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).

Count 4: Attempting to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e), in his interactions with an undercover officer posing as a minor.

ROA, Vol. I at 13-15.

## C. *The Trial*

Mr. Isabella's trial took 11 days. We detail the relevant evidence from: (1) the Government's case-in-chief; (2) the defense's case, including Mr. Isabella's testimony; and (3) the Government's rebuttal.

---

[2] The indictment initially charged Mr. Isabella with the completed production of child pornography in addition to the attempt charge. Because the Government conceded that Mr. Isabella did not play a role in the production of the only alleged child pornography in this case, the Government sought to amend the Indictment to address only attempted production of child pornography, and the district court granted its motion.

## 1. **The Government's Case-in-Chief**

The Government called 11 witnesses in its case-in-chief. Most relevant for this appeal was the testimony of S.F., P.F. (S.F.'s mother), and Homeland Security Special Agents Michael Thomas,[3] Paul Anderson, and Vanessa Wright.

### a. *S.F.'s testimony*[4]

S.F. testified at trial. She read the chats aloud and explained the nature of her relationship with Mr. Isabella. According to S.F., Mr. Isabella told her that he would send her a phone but she "must keep it hidden away until a designated time we set." ROA, Vol. VIII at 373. He also asked her if she could use Skype, Kik, and a variety of other messaging applications instead of text messages. He said, "We really should text on [Kik]. Safer. And you promise you will always protect me no matter what?" *Id.* at 347.

#### i. Age discussions

S.F. testified that, early in their communications, she told Mr. Isabella she was 14 years old. Mr. Isabella asked S.F. if she had a boyfriend and if she was okay with a "big older man." *Id.* at 284. He asked, "So in 4 years you are moving in with me then? . . .

---

[3] Special Agent Thomas's testimony is relevant to one of Mr. Isabella's evidentiary objections. We do not discuss his testimony in this section, but instead discuss the relevant portions of his investigation when we address the evidence issue below.

[4] During S.F.'s trial testimony, she read records of her conversations with Mr. Isabella. We have not edited these communications for spelling or grammar.

4

You will be 18, right? We could take a birthday trip somewhere exotic." *Id.* at 288. Mr. Isabella also asked S.F. if she could drive yet. She said that she knew how to drive but was not legally able to do so. S.F. also explained that her mother restricted her phone use.

S.F. asked Mr. Isabella how old he was. He responded that he was "nearly 3 times [her] age" and then stated that he was "39 and 11 months."[5] *Id.* at 285-86.

### ii. Meeting discussions

Mr. Isabella lived in Ohio. S.F. lived in Colorado. The two never met prior to trial, but they discussed meeting. On one occasion, Mr. Isabella said, "Haha. Come see me and we will party for dayzzz!!" *Id.* at 343. On another occasion, he said, "Grab a girlfriend and come visit me in florida this winter." *Id.* at 305. Mr. Isabella said he was in a band and suggested he might visit her in Colorado while on tour. He asked, "So if i got a hotel near you would you have a way to get to me?" *Id.* at 344. He followed up, "So when i come to you, you will stay with me?" S.F. responded, "I'll try." *Id.* at 345.

### iii. Sexual discussions

S.F. testified that if she had stayed with Mr. Isabella in the hotel, she thought they would have had sex. At one point, Mr. Isabella informed S.F. that he was aroused and S.F. responded, "U said u wish I could see what u do to me so show me." *Id.* at 301.

---

[5] Mr. Isabella was 56 years old at the time. He turned 57 years old in October 2013.

They proceeded to discuss having sex and penis size. *Id.* at 301-03. On a separate occasion, after sending S.F. a picture of his penis, Mr. Isabella discussed performing oral sex acts with her. *Id.* at 310. The conversations were at times even more graphic. *See id.* at 351-53 (testimony of Mr. Isabella detailing an imagined sexual encounter).

### iv. Picture discussions and exchanges

When Mr. Isabella sent S.F. the picture of his penis, he did so after stating that he was aroused. He said, "Ask me for a pic. Be specific." *Id.* at 307. When S.F. asked for a photo, he stated, "Pic of what? Say it." *Id.* When S.F. responded, "I don't know, surprise me," and "I don't know lol," Mr. Isabella followed up, "Age thing. You must ask me for it. . . . Or else you don't want it. Thats okay." *Id.* Eventually S.F. said, "send a dic pic." *Id.* at 308. He replied, "That's my baby girl," and sent her a picture of his penis. *Id.* at 308-10.

Mr. Isabella also asked S.F. for pictures. He requested pictures of "[her] pretty face," and she sent them. *Id.* at 293-94. He requested more photos, and stated they were "So beautiful!!!" *Id.* at 294. At one point, S.F. said she was "in the shower." *Id.* at 298. Mr. Isabella responded, "Pic now!! Haha." *Id.* He repeated the request: "Pic now!! (Again). Hahaaa!!" *Id.* After she responded without a picture, Mr. Isabella said, "I will bet you are gorgeous right now. Just send simple mirror pic." *Id.* S.F. sent him a picture of a fogged-up mirror. Mr. Isabella responded, "Any mirrors not fogged up?" and "Now I just want to see you a hundred times more." *Id.* at 299. After a separate shower reference, Mr. Isabella responded similarly: "Take a pic right now in mirror exactly as

6

you are and send me now." *Id.* at 293. In another conversation, he asked for more pictures and stated he was thinking of her "ripping off clothes and running around [the] room naked." *Id.* at 323-24.

Eventually, S.F. sent Mr. Isabella sexual photos. Mr. Isabella stated, "And wait a min. I sent you a pic of my manhood. And what have you sent meeeeee? Hehehehh." *Id.* at 312. S.F. then sent Mr. Isabella a picture of her naked body from the neck down (the "torso pic").[6] She testified that she did not take the picture for Mr. Isabella and that he had nothing to do with her taking it. The circumstances surrounding the picture's production are discussed below.

Mr. Isabella responded to the picture, "That is youuuuu???" and "Sooooo nice!! Got one with face?" *Id.* at 314. Then, "Reaaaally want a somewhat naughty pic with your face. Hahaaa. You doin homework?" *Id.* On a separate occasion, S.F. also sent a picture of herself in her bra and underwear. *Id.* at 362-63. She sent that same picture on multiple occasions.

### v. Cross-examination

On cross-examination, S.F. admitted that she lied to investigators about her interactions with Mr. Isabella. She initially told investigators that Mr. Isabella (1) had presented himself to her as a 17-year-old boy named Kyle, (2) had threatened to hurt her

---

[6] The parties and the district court used the "torso pic" label, but as the Government notes, "the photograph shows more than just S.F.'s torso." Aplee. Br. at 15 n.1.

sister if she did not send him pictures, and (3) had made her take the photos.  At trial,

defense counsel asked, "And you had just said that it wasn't true.  What part wasn't

true?"  *Id.* at 1965.  S.F. responded, "That he lied about his age.  That he lied about his

name.  That he was making me do it.  Everything that I did and I said was all by my own

choice.  He never made me do anything."  *Id.*  S.F. admitted that she "still ha[d] feelings

for [Mr. Isabella]" and stated that she "want[ed] to send pictures to Mr. Isabella because

of the way he made [her] feel."  *Id.* at 1967.[7]

        b.  *Special Agent Vanessa Wright's testimony*

Vanessa Wright, a special agent with the Department of Homeland Security,

investigated Mr. Isabella as an undercover agent ("UCA").  She posed as a 15-year-old

girl and initiated internet communications with Mr. Isabella in December 2013.  The

communications quickly turned sexual.  At one point, Mr. Isabella asked her if she would

stay in a hotel with him and suggested he could meet the UCA in Florida.  He also asked

for pictures and video from the UCA on multiple occasions, including a video of her

stripping and pictures of her vagina.

        c.  *Special Agent Paul Anderson's testimony*

Paul Anderson, a Homeland Security Investigations Special Agent, conducted a

forensic search of S.F.'s phone.  He explained how the phone's call log works and

---

[7] S.F.'s mother stated that S.F. wrote Mr. Isabella's name several times on a piece of paper and drew "little hearts" around it, "like a young girl does[] [with] somebody that she has affection for."  ROA Vol. VIII at 252.

presented the history of outgoing and incoming calls between S.F.'s phone and Mr. Isabella's phone. He also detailed the emails, pictures, and chats between S.F. and Mr. Isabella that he extracted from the phone. Those communications were entered into evidence.

Special Agent Anderson also conducted a forensic analysis of Mr. Isabella's phone and computer, which were seized during a search of his Ohio home. On direct examination, he explained the chats, emails, and pictures between Mr. Isabella and S.F. that he extracted from the phone. Those communications also were entered into evidence.

## 2. **The Defense's Case**

Mr. Isabella testified over the course of three days. His expert, Dr. Mark Mills, was the only other witness who testified for the defense.

### a. *Mr. Isabella's testimony*

Mr. Isabella explained his online dating habits, including his use of websites called "Plenty of Fish" and "O.K. Cupid," which allowed individuals over the age of 18 to meet online. He testified that Plenty of Fish users could only search for other individuals within 100 miles. He explained that users on those dating sites would sometimes pose as people that they were not, a term he called "catfishing."[8] When Mr. Isabella suspected

---

[8] Dr. Mills explained that "catfishing" is "putting on some role to some particular end. It might be to meet somebody. It might be to defraud them. It might be to gain access to them sexually." ROA, Vol. VIII at 2362.

users of catfishing, he testified that he tried to speak to them on the phone or through a live video communication program like Skype to verify their identity.

Mr. Isabella explained that he also used the internet for sexualized fantasies. He stated that he enjoyed the anonymity of the internet: "You can hide behind a handle and say anything you want, be anyone you want to be." ROA, Vol. VIII at 927. He testified about his sexualized fantasies and chats with individuals over the age of 18, some of whom had sent him nude photos. Many of these photos, Mr. Isabella testified, did not show the face of the individual sending them.

When presented at trial with the transcripts of his sexualized conversations with S.F., Mr. Isabella stated that they were consistent with his fantasies he discussed with other adults on dating and other social sites. He stated that he believed S.F. was "an adult, a college-aged person who can get up and move whenever they want." *Id.* at 1062.[9] He said that his communications with her were "fantasy related." *Id.* He testified that when he asked S.F. if she was "doing homework," he believed she was a "[c]ollege student doing homework." *Id.* at 1031. He further testified that when he spoke with S.F. about taking her "somewhere exotic" or getting a hotel room in Colorado, those

---

[9] At one point in Mr. Isabella's conversations with S.F., S.F. explained that she was worried she was pregnant, and Mr. Isabella told her to take a pregnancy test. Mr. Isabella testified that this conversation made him believe he was chatting with someone "over the age of 18." ROA, Vol. VIII at 1054.

proposals were "more fantasy" and that he made no plans to actually meet S.F. *Id.* at 1012-13, 1047-48.

Mr. Isabella also testified about his interactions with Special Agent Wright, the UCA who found him on Facebook. When they began to chat, the UCA stated she was 15 years old. Mr. Isabella testified that he thought she was "catfishing" him and did not believe her age. *Id.* at 1131. He explained that the UCA changed her name during their chats, engaged in highly sexualized conversations, and generally communicated as though she were an adult. He also stated that he believed his communications with the UCA were a form of fantasy.

Finally, Mr. Isabella testified about his interactions with M.E., an individual he met on O.K. Cupid. He explained that M.E.'s profile indicated she was 18 years old but that she "seemed to vacillate between 17 and 18 at times." *Id.* at 1209. He stated that he believed she was 18 through their conversations. Mr. Isabella also testified that he met M.E. on Valentine's Day, but he did not provide details of that encounter.

b. *Dr. Mills's testimony*

Dr. Mark Mills, an expert psychiatrist, testified after watching Mr. Isabella's testimony and reading the trial transcripts from the Government's case-in-chief. He stated that he also reviewed Mr. Isabella's chats with S.F. and conducted a psychological evaluation of Mr. Isabella. Based on the foregoing, Dr. Mills opined that Mr. Isabella (1) was "not a pedophile" and (2) did not have "the disinhibiting conditions associated with

11

being sexual with a minor." *Id.* at 2358. He also concluded that Mr. Isabella did not have any psychiatric disorder associated with child exploitation.

Dr. Mills further testified about the "internet's effect on sexual fantasies." *Id.* at 2358-61. He explained that online communications can enable sexual "role playing" and can cause some individuals to use "sexual aspects of the internet in an addictive fashion." *Id.* at 2360-61.

### 3. **The Government's Rebuttal Case**

The Government called M.E. for the first time in rebuttal. It also recalled Special Agent Paul Anderson.

#### a. *M.E.'s testimony*

M.E. testified over Mr. Isabella's objection. In January 2013, nine months before his chats with S.F. and 11 months before his chats with the UCA, Mr. Isabella met M.E., a minor at the time, on the dating site Plenty of Fish.[10] M.E. testified that her dating profile said she was 18 years old, but she informed Mr. Isabella early in their communications that she was 17. Mr. Isabella and M.E. spoke on the phone, text messaged, and video-chatted.

Mr. Isabella and M.E. had sexual conversations. Mr. Isabella sent M.E. pictures of his penis. M.E. sent Mr. Isabella pictures of her breasts and vagina. She testified that

---

[10] Mr. Isabella suggested they first met on O.K. Cupid. Both sites require the user to be 18 years old to open an account.

Mr. Isabella "specifically asked for that." ROA, Vol. VIII at 1443. When Mr. Isabella and M.E. had sexual discussions, Mr. Isabella instructed M.E. to use Skype because he did not want anyone to find those communications. She said that Mr. Isabella explained they would both get in trouble because M.E. was a minor.

Mr. Isabella suggested that M.E. come with him to Florida in the summer. M.E. explained that she hated Florida in the summer, but she agreed to meet Isabella in person on Valentine's Day in Ohio. M.E. skipped school and drove 90 minutes to meet Mr. Isabella at a coffee shop. M.E. stated that she was wearing her high school uniform at the time. Mr. Isabella drove M.E. to a truck stop and lifted the edge of her skirt. She pushed his hand away. They then drove to an abandoned house where Mr. Isabella tried to put his hand up M.E.'s skirt. M.E. drove home after their interaction. The two continued their communications after that day, though they chatted less frequently.

b. *Special Agent Anderson's rebuttal testimony*

The Government recalled Special Agent Anderson on rebuttal to speak about internet searches Mr. Isabella completed in September 2013. Special Agent Anderson testified that he had run a forensic analysis on Mr. Isabella's computer. Among other things, he provided evidence of three web pages that Mr. Isabella had visited during the same time frame as his communications with S.F. The web pages reflected that S.F. (1) attended a Colorado middle school and (2) participated in a middle school cross country meet on September 22, 2012. The agent testified that Mr. Isabella also ran a Facebook search for S.F. on September 19, 2013, shortly after Mr. Isabella began chatting with S.F.

13

D. *The Verdict and Sentence*

Mr. Isabella was convicted of Counts 1 and 2 for his communications with S.F. and acquitted of Counts 3 and 4 for his communications with the UCA. Specifically, for Count 1, Mr. Isabella was convicted of violating and attempting to violate 18 U.S.C. § 2422(b), which provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

For Count 2, Mr. Isabella was convicted of attempting to violate 18 U.S.C. § 2251(a) and (e), which provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) . . . .
>
> (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years . . . .

18 U.S.C. § 2251.

The jury filled out a special verdict form that provided two potential bases for a conviction under Count 1: (1) coercion and enticement and (2) attempted coercion and

14

enticement. The jury checked both boxes, indicating it found Mr. Isabella guilty of both a completed violation and an attempt violation of 18 U.S.C. § 2422(b).

As the statute indicates, § 2422(b) requires an underlying act chargeable as a "criminal offense." In addition to the special verdict options described above, the special verdict form also gave the jury two options for the underlying criminal sex act: (1) production of child pornography under federal law and (2) sexual intercourse or oral sex with a minor. For both the completed offense and the attempt offense on Count 1, the jury selected the box for production of child pornography.

The district court sentenced Mr. Isabella to two concurrent sentences of 216 months of incarceration, one for each count. Mr. Isabella timely appealed.

## II. DISCUSSION

The following sections address Mr. Isabella's issues on appeal: (A) sufficiency of the evidence for his convictions, (B) evidentiary rulings, and (C) multiple punishments under the Double Jeopardy Clause.

### A. *Sufficiency of the Evidence*

Mr. Isabella was convicted of Count 1 for violating § 2422(b) on two grounds: (1) persuading a minor to produce child pornography and (2) attempting to persuade a minor to produce child pornography. Because we conclude the evidence was sufficient to convict Mr. Isabella on the attempt theory, we do not address whether the evidence also was sufficient to support a completed offense. Mr. Isabella was convicted of Count 2 for attempting to persuade S.F. to produce child pornography, in violation of § 2251(a) and

15

(e). As the Government notes, "the analysis of the [substantial step] evidence supporting the two attempt counts is essentially the same." Aplee. Br. at 24. Accordingly, we address the sufficiency of the evidence for the attempt offenses under Counts 1 and 2 together.

1. **Standard of Review**

We review de novo[11] whether there was sufficient evidence to support a defendant's convictions, *United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004), viewing all the evidence and any reasonable inferences drawn therefrom in the light most favorable to the government, *United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009). We consider all evidence, circumstantial and direct, but we do not weigh the evidence or consider the credibility of witnesses. *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013). We will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Anaya*, 727 F.3d 1043, 1050 (10th Cir. 2013).

---

[11] Mr. Isabella moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 after the Government's case-in-chief, arguing there was insufficient evidence to send the case to the jury. He renewed his Rule 29 motion at the close of evidence. He therefore preserved the issue for appeal.

2. **Legal Background**

a. *Federal child pornography offenses*

The underlying offense for both of Mr. Isabella's attempt convictions under § 2422(b) and § 2251(a) and (e) was "producing [a] visual depiction" of a minor engaging in "sexually explicit conduct." 18 U.S.C. § 2251(a). "Sexually explicit conduct" is defined as "graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited." 18 U.S.C. § 2256(2)(B). And producing "child pornography" is defined as creating a "visual depiction" of a minor engaged in "sexually explicit conduct." 18 U.S.C. § 2256(8).

Courts have devised a multi-factor test for deciding whether a "visual depiction" constitutes child pornography. *See United States v. Wolf*, 890 F.2d 241, 244 (10th Cir. 1989) (adopting six-factor inquiry announced in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). Under this test, "mere nudity is not sufficient to constitute child pornography; rather, the nudity must be depicted in a lascivious manner in order to be criminal." *United States v. Soderstrand*, 412 F.3d 1146, 1151-52 (10th Cir. 2005) (surveying case law).

17

b. *Attempted persuasion or enticement*[12]

Both § 2422(b) and § 2251(a) and (e) require the defendant to persuade, induce, entice, or coerce, or attempt to do so. Courts have given these terms their ordinary meanings: "To 'persuade' is 'to induce by argument, entreaty, or expostulation into some mental position'; to 'induce' is 'to move and lead (as by persuasion or influence)'; and to 'entice' is 'to draw on by arousing hope or desire.'" *United States v. Goetzke*, 494 F.3d 1231, 1235 n.3 (9th Cir. 2007) (quoting Webster's Third New International Dictionary 757, 1154, 1687 (unabridged ed. 1993)); *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011) ("[T]he term 'persuade' in 18 U.S.C. § 2422(b) has an ordinary meaning that is not subject to ambiguity."). To prove an attempt, the government must show (1) specific intent to commit the crime, and (2) a substantial step towards completion of the crime. *United States v. Faust*, 795 F.3d 1243, 1248 (10th Cir. 2015).

i. Specific intent

Specific intent means more than a general intent to commit the prohibited act. *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995). It requires the defendant to commit the act "voluntarily and purposely with the specific intent to do something the law forbids." *Id.* (quotations omitted). In *Faust*, we explained that "[s]ection 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to

---

[12] At times, we use the shorthand "persuade or entice" in this opinion. This should be understood to encompass all the means of violating § 2422(b): "persuade[], induce[], entice[], or coerce[]."

18

commit the underlying sexual act." *Faust*, 795 F.3d at 1249 (quotations omitted). We

quoted the Sixth Circuit:

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.

*Id.* (quoting *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)). We also relied

on the Seventh Circuit's declaration that § 2422(b) "criminalizes 'the sexual grooming of

minors,' regardless of any intent to consummate the illegal sexual activity." *Id.* (quoting

*United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011)). Stated differently, § 2422(b)

"criminalizes an intentional attempt to achieve a *mental* state—a minor's assent." *Id.* at

1249 n.6 (quoting *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007)).

ii. Substantial step

To prove attempt, we said in *Faust* that "the government had to show that [the

defendant] took a substantial step towards the commission of the ultimate crime, and that

such step was more than mere preparation." *Id.* (quotations omitted); *see also United

States v. Munro*, 394 F.3d 865, 869 (10th Cir. 2005). The substantial step question is a

"highly fact-specific inquiry." *Faust*, 795 F.3d at 1248 (quotations omitted).

The Tenth Circuit has not issued a published case addressing a sufficiency of the

evidence challenge to an attempt conviction concerning the production of child

19

pornography under either § 2422(b) or § 2251(a) and (e).[13]  Accordingly, as background

for our substantial step analysis, we discuss (1) Tenth Circuit § 2422(b) attempt cases

addressing sexual activity, (2) out-of-circuit attempt cases addressing "grooming" as a

substantial step, and (3) attempt cases concerning the production of child pornography.

### 1) Tenth Circuit substantial step case law

In assessing substantial steps toward persuasion or enticement to engage in sexual

activity, we have drawn a rough line between "harmless banter" and illegal inducement.

*United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005).[14]  In *Thomas*, we held

that the defendant "crossed the line . . . the moment he began making arrangements to

meet [the purported minor], notwithstanding the lack of evidence that he traveled to the

supposed meeting place."  410 F.3d at 1246.  Similarly, in *Faust* we held that the

substantial step requirement was satisfied by "discussing in graphic detail precisely what

---

[13] In an unpublished decision discussed below, we addressed a sufficiency of the evidence challenge to a conviction under § 2422(b) and § 2251(a) and (d) where the underlying conduct was the production of child pornography, which qualified as a violation of Wyoming's child exploitation statute.  *See United States v. Wales*, 127 F. App'x 424, 431 n.7 (10th Cir. 2005).

[14] Other circuits have framed the question as a difference between "persuading," which is criminal, and "asking," which is not.  *See United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006) ("[T]here may be a certain degree of imprecision around the edges of these terms, such as where the line between mere 'asking' and 'persuading' is drawn.").  The Third Circuit explained, "Section 2422(b) does not prohibit all communications with a minor; nor does it prohibit all communications that relate to illegal sexual activity.  It only proscribes communications that actually or attempt to knowingly 'persuade,' 'induce,' 'entice' or 'coerce' a minor to engage in illicit sexual activity."  *Id.* at 482; *see also United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007).

20

sexual acts would be allowed, negotiating a price, and agreeing to a meeting place."
*Faust*, 795 F.3d at 1250. We upheld the defendant's conviction even though his communications were with an undercover officer posing as a minor's parent, not directly with a minor. *Faust*, 795 F.3d at 1250 n.7.

Also instructive is our "substantial step" analysis in *Munro*. *See* 394 F.3d at 869-70. We detailed the defendant's acts of attempted enticement, which included (1) initiating conversation with the purported minor; (2) broaching the topics of sex and suggesting an in-person meeting; (3) increasing the detail of the sexual conversations, including statements "regarding virginity, sexual experiences, and his desire to perform oral sex on the minor"; and (4) stating "he had money, his own place, a car, an XBox, a Play Station 2, and a DVD player." *Id.* at 869-70. We stated that the video games and other offers "could reasonably be interpreted as attempts to impress [the purported minor] and give her incentives to meet and engage in sexual activities with" him. *Id.*

2) Out-of-circuit cases addressing "grooming" as a substantial step

"Sexual abuse of minors can be accomplished by several means and is often carried out through a period of grooming." *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) (quotations omitted). "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Chambers*,

21

642 F.3d 588, 593 (7th Cir. 2011); *see also United States v. Brand*, 467 F.3d 179, 203

(2d Cir. 2006); *Goetzke*, 494 F.3d at 1235.[15]

In *Goetzke*, the government established grooming by showing the defendant had a

prior relationship with the minor and used letters to persuade him to engage in "a sexual

encounter in the event he returned to Montana."  494 F.3d at 1236.  The court recounted

the evidence:

> Redolent of the fun they had together riding horses, fishing,
> and being massaged, the letters were crafted to appeal to [the
> minor], flatter him, impress him, and encourage him to come
> back to Montana "maybe this summer" when school was out,
> by promising the same kind of fun and a motorcycle of [the
> minor's] own.

*Goetzke*, 494 F.3d at 1235.  In *Goetzke*, the Ninth Circuit found the letters were sufficient

evidence to sustain the defendant's attempt conviction under § 2422(b).  *Id.*

By contrast, in *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), the Seventh

Circuit vacated a conviction for insufficient evidence under § 2422(b) when the

defendant discussed having sex with the purported minor but did not take any affirmative

steps—"such as making a hotel reservation, purchasing a gift, or buying a bus or train

ticket"—toward actually meeting.  *Id.* at 649-50.  The court distinguished *Goetzke*:  "[The

---

[15] Grooming can be established by use of an expert witness who testifies about psychological tactics that are common in cases of child sex abuse.  *United States v. Batton*, 602 F.3d 1191, 1202 (10th Cir. 2010).  But expert testimony is not necessary to establish grooming.  *See Goetzke*, 494 F.3d at 1235 (finding sufficient evidence of grooming without expert testimony); *Engle*, 676 F.3d at 412 (same).

defendant's] talk and his sending her a video of himself masturbating . . . are equally consistent with his having intended to obtain sexual satisfaction vicariously. . . . He may have thought (this is common in Internet relationships) that they were both enacting a fantasy." *Id.* at 650. Thus, it did not find sufficient evidence to support a theory of "grooming" based solely on the defendant's sexualized chats. *Id.*

### 3) Attempted persuasion to produce child pornography

The cases discussed in the preceding section concern charges under § 2422(b) for attempts to persuade a minor to engage in sexual activity other than producing child pornography. In *United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010), the Eleventh Circuit rejected a defendant's sufficiency of the evidence challenge to a conviction under § 2251(a) and (e) for attempted persuasion to produce child pornography. The evidence showed he communicated with an undercover federal employee for months and had sought to engage in sexual activity with whom he believed were her minor daughters. *Id.* at 916-18. In advance of the proposed meeting, the defendant "actively planned the production of photographs that depicted [the] minor daughters in graphic sexual poses. He described how many photographs he wanted of each girl, how he wanted the girls to pose, and provided his home address so that he could view the finished product." *Id.* at 918. The court upheld his conviction under § 2422(b) for the attempted sexual encounters and upheld his conviction under § 2251(a) and (e) for the attempted production of child pornography. *Id.* at 914, 918.

23

Similarly, in *United States v. Pierson*, 544 F.3d 933, 936-38 (8th Cir. 2008), the defendant used various online personas to communicate with an undercover officer posing as a 14-year-old girl. Over approximately three months, the defendant discussed sex with the undercover officer and proposed meeting on several occasions. *Id.* at 937. He also asked for sexual photographs and ultimately sent the officer money for a webcam to transmit sexual images. *Id.* at 936-37. As in *Lee*, the court upheld his conviction under § 2422(b) for the attempted sexual encounters and upheld his conviction under § 2251(e) for the attempted production of child pornography. *Id.* at 938-40.

The facts of our unpublished opinion in *United States v. Wales*, 127 F. App'x 424, 431-42 (10th Cir. 2005), are similar to *Lee* and *Pierson*. In *Wales*, the defendant asked an undercover officer posing as a minor to "[t]ake pictures of your pussy for me . . . [p]ictures of you fingering yourself." *Id.* at 431. To encourage the pictures, he sent the undercover officer examples of the kinds of photos he wanted. *Id.* at 431-32. We further summarized the communications: "Through the medium of the chat room Mr. Wales used flattery, highly charged sexual images, and a false female persona in his quest to obtain images of [the purported minor] engaging in masturbation with the possibility that an illicit meeting might occur at a later occasion." *Id.* at 431 (quotations omitted). We upheld the defendant's convictions under § 2422(b) for attempting to engage in conduct constituting a violation of the Wyoming "sexual exploitation of a child" statute, Wyo.

Stat. Ann. § 6-4-303(b)(i), and for attempting to violate § 2251(a) and (d). *Id.* at 425, 431 & n.7.[16]

3. **Analysis**

Because Mr. Isabella was convicted of attempting to persuade S.F. to produce child pornography under both § 2422(b) and § 2251(a) and (e), and because the evidence supporting both counts is identical, our sufficiency of the evidence analysis is the same for Counts 1 and 2. The parties agree. *See* Aplee. Br. at 24 (stating "the analysis of the evidence supporting the two attempt counts is essentially the same"); Aplt. Br. at 16 (analyzing attempt convictions without distinguishing between them); *see also Hart*, 635 F.3d at 858 (stating "§ 2251 uses the term persuade in the same way that the word is used in § 2422(b)"). We conclude the evidence was sufficient for a reasonable jury to convict Mr. Isabella of attempting to persuade S.F. to produce child pornography.[17]

Mr. Isabella and S.F.'s relationship spanned three months. *See Lee*, 603 F.3d at 908-11 (affirming attempt conviction based on approximately six months of

---

[16] At the time, § 2251(d) provided for the attempt liability that is now codified in § 2251(e).

[17] Mr. Isabella's sufficiency argument focuses on the substantial step aspect of the attempt analysis. *See* Aplt. Br. at 16-19 (relying on substantial step argument). To the extent he argues that the evidence does not establish his specific intent, we note that his explicit requests for "naughty" and "naked" photos were more than sufficient to infer specific intent to persuade S.F. to send him child pornography. Similarly, his interactions with M.E. and the UCA evince a common scheme of attempting to persuade minors to send explicit photos, and the jury could reasonably have inferred that Mr. Isabella intended to continue that scheme with S.F.

25

communication); *Pierson*, 544 F.3d at 935-37 (affirming conviction based on approximately three months of communication). They called each other "boyfriend" and "girlfriend," and Mr. Isabella communicated with S.F. every day for some periods, including on the phone. He did not need to go through an adult intermediary, as the defendant did with the undercover officer posing as a minor's parent in *Faust*, 795 F.3d at 1245-46. Mr. Isabella was able to confirm that S.F. was a minor by speaking to her on the phone, seeing her photos, and finding her name and other information about her on Facebook and through internet searches. He therefore knew S.F. was a minor. And he knew he was not dealing with an undercover officer pretending to be a minor, as the defendant was in *Munro*, 394 F.3d at 868.

During their conversations, Mr. Isabella and S.F. spoke explicitly about sex, including conversations about Mr. Isabella's penis. At one point, after Mr. Isabella sent S.F. a picture of his penis, he asked whether she "want[ed] that in [her] mouth now? Tell me." ROA, Vol. VIII at 310. As in *Munro*, their conversations addressed "virginity, sexual experiences, and [Mr. Isabella's] desire to perform oral sex on" S.F. *See* 394 F.3d at 869-70. Moreover, Mr. Isabella's conduct showed "deliberate actions taken . . . to expose [S.F.] to sexual material," and to make her comfortable with the idea of him as her "boyfriend." *See Chambers*, 642 F.3d at 593. As a result, a reasonable jury could have concluded that Mr. Isabella acted to reduce S.F.'s "inhibitions in order to prepare [her] for sexual activity," namely, sending images of sexually explicit conduct. *See id.*;

26

*Goetzke*, 494 F.3d at 1235.  Indeed, S.F. testified that she sent Mr. Isabella photos because of the positive way he made her feel.

The trial evidence showed "more than . . . explicit sex talk."  *Gladish*¸ 536 F.3d at 649.  Mr. Isabella and S.F. also exchanged photos.  Although sending the picture of his penis was not alone sufficient to establish enticement, *see id.* at 650, Mr. Isabella later used the photo to suggest a quid pro quo:  "I sent you a pic of my manhood.  And what have you sent meeeeee?"  ROA, Vol. VIII at 312.  The graphic photo of Mr. Isabella suggested to S.F. the kinds of photos he wanted.  Moreover, after S.F. sent the torso pic, Mr. Isabella encouraged her.  He said, "That is youuuuu???" and "Sooooo nice!!  Got one with face?"  ROA, Vol. VIII at 313-14.  He continued, "Reaaaally want a somewhat naughty pic with your face."  *Id.* at 314.  A "somewhat naughty" picture is not the same as the explicit requests in *Lee*, but the request evinced a desire to receive sexual photos from S.F. and was a step to convincing her to do so.  *Lee*, 603 F.3d at 916-17 (analyzing substantial step based on "totality" of defendant's conduct).

The same is true for Mr. Isabella's requests for pictures of S.F. coming out of the shower:  "Pic now!!  Haha."  ROA, Vol. VIII at 298.  He repeated:  "Pic now!!  (Again).  Hahaaa!!"  *Id.*  After S.F. responded without a picture, Mr. Isabella said, "I will bet you are gorgeous right now.  Just send simple mirror pic."  *Id.*  After a separate shower reference, Mr. Isabella responded similarly:  "Take a pic right now in mirror exactly as you are and send me now."  *Id.* at 293.  Later, in asking for more pictures, Mr. Isabella stated that he was thinking of her "ripping off clothes and running around [the] room

27

naked." *Id.* at 323-24. He also stated he needed the pictures to help with his erections. The repeated requests accompanied by explicit references to sex showed the kinds of photos Mr. Isabella wanted.

We agree with our sister circuits that the line between "asking" and "persuading" is imprecise, but a reasonable jury could conclude Mr. Isabella crossed it. *See Tykarsky*, 446 F.3d at 473. The three-month relationship between S.F. and Mr. Isabella, the sexualization of their communications, the requests for pictures, the exchange of nude pictures, and the encouragement of further explicit pictures provided sufficient circumstantial evidence of a "substantial step" for a reasonable jury to convict Mr. Isabella of attempting to persuade or entice S.F. to produce child pornography.

B. *Evidentiary Issues*

Mr. Isabella alleges that the district court made evidentiary errors regarding (1) the torso pic, (2) the circumstances surrounding the torso pic, (3) the penis picture Mr. Isabella sent to S.F., (4) M.E.'s testimony, (5) the internet search exhibits, and (6) the grooming testimony.

1. **Standard of Review**

"We review legal interpretations of the Federal Rules of Evidence de novo." *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998). We review evidentiary decisions applying the rules for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014). "A district court abuses its discretion when it renders an arbitrary, capricious,

28

whimsical, or manifestly unreasonable judgment." *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018) (quotations omitted). We will not reverse a district court's evidentiary decision so long as it falls "within the bounds of permissible choice in the circumstances." *United States v. Durham*, 902 F.3d 1180, 1222 (10th Cir. 2018) (quotations omitted).

If a defendant did not object at trial, however, or "objected on grounds not now asserted as error, we review [the] issue for plain error." *United States v. Simpson*, 152 F.3d 1241, 1250 (10th Cir. 1998).[18] In deciding whether a motion in limine adequately preserved the defendant's objection, we ask (1) whether the objection was adequately presented to the district court, (2) whether the issue could have been finally decided in a pretrial hearing and was not dependent on the character of other evidence, and (3) whether the district court's ruling was definitive. *United States v. Mejia-Alarcon*, 995 F.2d 982, 986-88 (10th Cir. 1993).

---

[18] Plain error requires the appellant to show: (1) error, (2) that is plain, (3) that "affect[ed] substantial rights," and (4) that seriously affects the "fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993).

## 2. **Evidentiary Objections**

### a. *The torso pic*

#### i. Additional background

Through forensic analysis, a defense expert determined that the torso pic was produced before S.F. began communicating with Mr. Isabella. The expert report determined that the torso pic was taken as part of a series showing a romantic encounter between S.F. and a male. The series suggested that S.F. engaged in sexual activity with the male in the photos. The expert opined that the male in the photos, and not S.F., took the torso pic.

After submitting the expert report, Mr. Isabella moved in limine to exclude the introduction of the torso pic, arguing it was not relevant to the attempt offense and its probative value would be substantially outweighed by a danger of unfair prejudice under Federal Rule of Evidence 403. Applying Rule 403, the district court denied the motion.

#### ii. Legal background

Federal Rule of Evidence 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[U]nfair prejudice" means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Silva*, 889 F.3d at 712 (quotations omitted). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly

relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

"The district court has considerable discretion in performing the Rule 403 balancing test, but exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *Silva*, 889 F.3d at 712 (quotations omitted); *see also Durham*, 902 F.3d at 1224.

### iii. Analysis

The district court's denial of Mr. Isabella's in limine objection and admission of the torso pic was not an abuse of discretion.[19] As discussed above, the Government's "substantial step" theory relied on communications between Mr. Isabella and S.F. that occurred over three months and involved sexual conversations and photo exchanges. Although the torso pic may not have been child pornography, it was nonetheless a nude picture that S.F. provided at Mr. Isabella's request. Mr. Isabella's statement that the picture was "Soooooo nice" and his request that S.F. send him additional "somewhat naughty" photos were probative of both his method and objective. *See Goetzke*, 494 F.3d at 1235 (detailing evidence of grooming). The torso pic was a significant step in Mr.

---

[19] Contrary to the Government's assertion, Mr. Isabella did not waive his objection to the torso pic by failing to object to its admission at trial because (1) he raised the issue in a motion in limine, (2) the introduction of the torso pic did not depend on any other evidence, and (3) the district court definitively ruled on the motion after a full hearing. *See Mejia-Alarcon*, 995 F.2d at 986-88.

Isabella's attempt to persuade S.F. to send him child pornography. The district court did not abuse its discretion in determining the picture's probative value was not "substantially" outweighed by its prejudicial effect.

b. *Circumstances surrounding the torso pic*

i. Additional background

As an alternative to Mr. Isabella's motion in limine to exclude the torso pic, he objected to its introduction without being able to cross-examine S.F. about the circumstances surrounding the photo. He also sought to introduce the other photos in the series found on S.F.'s phone. Defense counsel stated, "We are seeking to introduce those series of photos to establish that S.F. is a liar, and that she has lied." ROA Vol. VIII at 136. The district court excluded this evidence, reasoning that Mr. Isabella had alternative avenues through cross-examination of S.F. to challenge her credibility. Applying Federal Rule of Evidence 412—which limits the introduction of evidence suggesting a victim's sexual behavior or alleged sexual predisposition—the court said it would "afford the defendant the opportunity to cross-examine S.F. concerning her previous lies in general, and concerning this particular photograph; when the photograph was taken, but not the actual origins of the photograph." ROA, Vol. VIII at 146.

Defense counsel continued to object, stating "one of the recognized exceptions [to Rule 412] is the infringement on the constitutional rights of the defendant. . . . I'm sure we would all agree . . . the right to effectively confront is implicated." *Id.* The court responded, "If you tell me what questions you want to ask and how they are relevant to

32

whether or not [S.F.] is lying, I may reconsider.  But right now you are not going to have any . . . blanket [permission] to come in." *Id.* at 147.  Defense counsel did not provide a list of questions at trial and did not again seek to introduce the series of photos or to cross-examine S.F. on how the photos were produced.

### ii.  Legal background

Rule 412 prohibits the introduction of "evidence offered to prove a victim's sexual predisposition" or that the victim "engaged in other sexual behavior."  Fed. R. Evid. 412(a).  The exceptions to Rule 412 include criminal cases where the exclusion of the evidence "would violate the defendant's constitutional rights."  Fed. R. Evid. 412(b)(1)(C).

Under the Sixth Amendment's Confrontation Clause, a criminal defendant has a right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This includes the right to cross-examine witnesses.  *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *United States v. Begay*, 937 F.2d 515, 523 (10th Cir. 1991) (stating, "to establish [a] 6th Amendment violation, defendant must show that he was precluded from offering evidence material and favorable to his defense" (quotations omitted)).  "[T]he exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  *Davis*, 415 U.S. at 316-17.

The right to cross examine includes the right to impeach the alleged victim by establishing and explaining the victim's motivation to lie.  *Olden v. Kentucky*, 488 U.S. 227, 232 (1988).  But, "[t]he Confrontation Clause does not require the admission of

33

potentially inflammatory and irrelevant testimony when a defendant has other avenues to attack a witness's credibility." *United States v. Oliver*, 278 F.3d 1035, 1041 (10th Cir. 2001).

   iii. <u>Analysis</u>

 Mr. Isabella wished to use the photos on S.F.'s phone and to cross-examine her about the circumstances underlying the torso pic to show that S.F. lied to investigators about whether she created the photos for Mr. Isabella. But the district court found Mr. Isabella had "other avenues to attack [S.F.'s] credibility." *See Oliver*, 278 F.3d at 1041. He could rely on S.F.'s testimony that she lied to investigators and her admission that she did not create the torso pic for Mr. Isabella. Aside from impeachment, Mr. Isabella did not articulate another Sixth Amendment purpose for his proposed cross-examination. *See id.* ("The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (quotations omitted)). Given Mr. Isabella's alternative means to impeach on cross-examination, the district court did not abuse its discretion by limiting the introduction of evidence suggestive of S.F.'s "sexual predisposition" and her previous sexual activity with the male depicted in the photos on her phone. *See* Fed. R. Evid. 412(a).

34

c. *The penis picture*

i. Additional background

Mr. Isabella objected under Rule 403 to the introduction of the picture of his penis that he sent to S.F. He argued that it was an example of "adult pornography" only, and proposed, as a "compromise" stipulation that it not be shown to the jury but instead that the jury only be told that he sent it to S.F. ROA, Vol. VIII at 182. The district court overruled the objection, noting that the proposed stipulation was "not the same" as showing the picture itself, and explaining that the picture was relevant because "he sent it to a minor child." *Id.* at 182-83.

ii. Analysis

Federal Rule of Evidence 403 governs this issue. The district court did not err in admitting Mr. Isabella's penis picture. The picture, and his request that S.F. send him an equivalent photo, was probative of his intent and the nature of explicit photos he sought from S.F. He tried to make the picture part of a "quid pro quo"—an exchange of photos—and it was therefore a step to persuade S.F. to send him "naughty" photos. The district court did not abuse its discretion in deciding that the Government was not required to censor its case by stipulating that Mr. Isabella sent the photo to S.F. rather than introducing it.

35

d. *M.E.'s testimony*

i. Additional background

The Government filed a pretrial notice seeking to "admit evidence related to [M.E.] in its case-in-chief" under Federal Rules of Evidence 414 and 404(b). ROA Vol. I at 297. Mr. Isabella objected. The district court overruled the objection, explaining that M.E.'s testimony rebutted Mr. Isabella's potential defense that he was only an "internet fantasy user" and concluding the testimony was more probative than prejudicial. ROA, Vol. VIII at 181-82. At the end of the pretrial hearing on this matter, the Government sought to "clarify the 414, 404(b) ruling" by "confirm[ing] that we can call [M.E.] in our case-in-chief." *Id.* at 195. The court responded, "Yes." *Id.*

The Government did not call M.E. in its case-in-chief. It waited to call her as a rebuttal witness after Mr. Isabella had testified, among other things, that (1) he believed S.F. was "in college" or "an adult," (2) he made no plans to meet or engage in sexual activity with her, and (3) his invitations to meet her were only "fantasy."

Before M.E. testified, Mr. Isabella renewed his objection. The court again overruled the objection, stating that it would allow M.E.'s testimony to rebut Mr. Isabella's "entire defense theory . . . that this is all fantasy." But it also excluded explicit photos of M.E. and prejudicial sexual details of M.E.'s in-person interactions with Mr. Isabella.

As part of the discussion before M.E.'s testimony, defense counsel sought to clarify the court's ruling, suggesting that admission under Rule 414 was inappropriate

because coercion and enticement of a minor under § 2422(b) is not one of the statutes listed in Rule 414.[20] The court noted that, rather than "being offered for propensity" under Rule 414, the testimony was more appropriately considered under a Rule 404(b) and Rule 403 balancing analysis. ROA, Vol. VIII at 2443-44. It determined the evidence was admissible "with respect to knowledge, intent, motive, modus operandi, et cetera." *Id.* at 2443. After M.E. testified, Mr. Isabella moved for a mistrial. The court denied the motion but issued a limiting instruction in its final jury instructions regarding the evidence of Mr. Isabella's "similar acts."[21]

　　ii. Legal background

Federal Rule of Evidence 404(b) provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

---

[20] Rule 414 does include § 2251 in the statutes it references. *See* Fed. R. Evid. 414(d)(2)(B) (defining "child molestation" as "any conduct prohibited by 18 U.S.C. chapter 110").

[21] In full, the instruction read:
> You have heard evidence of other acts engaged in by Mr. Isabella. You may consider that evidence as it bears on Mr. Isabella's motive, intent, knowledge, absence of mistake or accident, or modus operandi, but for no other purpose. Of course, the fact that Mr. Isabella may have previously committed an act similar to the one charged in this case does not mean that Mr. Isabella necessarily committed the act charged in this case.
> Modus operandi means a method of operating or a manner of procedure.

ROA, Vol. I at 587.

(2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In *Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court explained the evidence rules protect a defendant from the prejudicial effect of prior bad act evidence in four ways:  (1) Rule 404(b)'s requirement that the evidence be offered for a proper purpose; (2) the relevancy requirement of Rule 402; (3) the district court's Rule 403 assessment; and (4) Rule 105, "which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."  *Id.* at 691-92.

For evidence of prior bad acts to be admissible, they

(1) must tend to establish intent, knowledge, motive, identity, or absence of mistake or accident; (2) must also be so related to the charged offense that it serves to establish intent, knowledge, motive, identity, or absence of mistake or accident; and (3) must have real probative value, not just possible worth.

*United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985); *see also United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 715 (2018).  In assessing whether prior bad acts followed the same modus operandi of the charged offense, we may consider, among other things, whether the acts occurred close in time. *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006).

38

In *United States v. Esch*, 832 F.2d 531 (10th Cir. 1987), we acknowledged that "evidence of other acts [was] not admissible solely to prove a defendant's criminal disposition" in a § 2251(a) prosecution for sending child pornography through the mail. *Id.* at 535. But we affirmed the district court's decision to admit evidence of the defendant sending sexually explicit magazines, advertisements, and photographs through the mail on previous occasions because it "tended to rebut her contention that she had been duped by" another individual, and it established that she knew the child pornography would be delivered. *Id.* at 536. We therefore affirmed the principle that when a defendant denies an element of the crime—in *Esch*, she denied intent and knowledge of the mailing scheme—evidence of prior acts is admissible to rebut the denial. *Id.*; *see also Henthorn*, 864 F.3d at 1247, 1257-58 (admitting evidence of defendant's prior assaults on the victim and the defendant's ex-wife to rebut argument that victim's death was an accident).

### iii. Analysis

The district court did not abuse its discretion in admitting M.E.'s testimony under Rule 404(b).

First, we must view the court's evidentiary decision in the context of the ongoing trial, including all charges pending against the defendant, not from the perspective of appellate hindsight. *See United States v. Jordan*, 485 F.3d 1214, 1222 (10th Cir. 2007) ("In hindsight, we might have evaluated [the defendant's] proffer somewhat differently."). The indictment charged Mr. Isabella with four counts, two concerning his

39

communications with S.F. and two relating to the undercover officer. For Counts 1 and 3 (alleging violations of § 2422(b)), the Government proceeded on the theory that Mr. Isabella attempted to persuade S.F. and the UCA to meet and engage in sexual activity. Although the jury rejected that theory in both instances, Mr. Isabella does not challenge that the prosecution could attempt to prove them at trial. The testimony from M.E. about meeting with Mr. Isabella presented a modus operandi consistent with the prosecution's theory of Mr. Isabella's attempting to meet with S.F. and the UCA and have sex.

Second, as in *Esch*, the district court did not abuse its discretion in allowing the Government to rebut Mr. Isabella's trial testimony that he engaged in the online communications with S.F. only as a fantasy internet activity. His insistence on this ground for his defense was pervasive throughout his trial testimony, including how he characterized his communications with S.F. and the UCA.[22] His fantasy theory challenged the Government's proof of his specific intent and opened the door to evidence that he was not engaged only in fantasy but instead was preying sexually on young girls.

The M.E. evidence showed that, when Mr. Isabella asked S.F. or the UCA to meet him, he was not fantasizing. He meant to meet them if he could, just as he met M.E. No meeting occurred between Mr. Isabella and S.F. or the UCA, but the conversations with

---

[22] Mr. Isabella claimed throughout his testimony that he was solely a fantasy internet user and was not interested in enticing or engaging in sexual activity with a minor. He used the words "fantasy" or "fantasies" approximately 120 times, more than 70 of them during direct or redirect examination. Defense counsel used the words more than 50 times in his questions to Mr. Isabella.

M.E. leading to an actual meeting undermined his insistence that his interactions with S.F. were only a matter of fantasy and not consistent with a specific intent to engage in sexual activity with her or persuade her to provide child pornography to him. Not only did M.E.'s testimony show that Mr. Isabella pursued her similarly to the way he pursued S.F., it also showed his intent was not limited to fantasizing as to either of them— showings that fit squarely in the permitted uses of prior bad act evidence under Rule 404(b).[23]

Third, the timing of Mr. Isabella's communications with M.E. was probative of his intent and modus operandi. *See Mares*, 441 F.3d at 1158. Mr. Isabella began chatting with M.E. nine months before he first met S.F. online. He started chatting with the UCA approximately one month after he stopped communicating with S.F. His communications with all three individuals occurred in succession over a single year, suggesting that when one internet relationship with a minor failed, he attempted to begin another. He used Kik, Skype, and other applications to make his communications "safer"; he invited each girl to Florida; and he requested explicit photos. As the district

---

[23] M.E.'s testimony was also probative of Mr. Isabella's "knowledge" that he was communicating with minors online. Fed. R. Evid. 404(b). Mr. Isabella testified that he believed the UCA, S.F., and M.E. were all over 18 years old. But M.E. testified that she (1) told Mr. Isabella she was 17 years old, (2) wore a school uniform when they met, and (3) stated she was skipping school when they met. This testimony tends to rebut Mr. Isabella's claims that he did not know S.F.'s age even after she told him she was 14 years old.

41

court properly noted, "the chats, what he asked for, all of that goes to his motive, intent, modus operandi." ROA, Vol. VIII at 2437.

Fourth, the district court conducted a Rule 403 balancing analysis and excluded evidence that it found to be too prejudicial, including explicit pictures of M.E. and sexual details of her in-person interaction with Mr. Isabella. *See Huddleston*, 485 U.S. at 691. Further, the court instructed the jury not to consider M.E.'s testimony to prove propensity, but only to consider it under Rule 404(b) as evidence of knowledge, intent, or modus operandi. *See id.* at 691-92.

Under de novo review, we might have limited M.E.'s testimony further, but that does not mean the district court's decision was an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Silva*, 889 F.3d at 709 (quotations omitted). To the contrary, its exclusion of some of the evidence shows that it tailored M.E.'s testimony to minimize potential prejudicial effect, and it instructed the jury to consider the testimony only for a specific purpose. *See Huddleston*, 485 U.S. at 691-92. Its decision to allow the rebuttal testimony from M.E. was not an abuse of discretion.[24]

---

[24] We acknowledge that Mr. Isabella's interactions with M.E. were not identical to his communications with S.F. *See* Aplt. Br. at 26 (arguing that "the circumstances surrounding M.E.'s encounters with Mr. Isabella were not similar to those with S.F."). Among other things, Mr. Isabella met M.E. on a dating site and lived in the same state as her. But in light of Mr. Isabella's "fantasy" defense at trial and his assertion that he did not know S.F.'s age, we cannot conclude that the district court's decision to admit M.E.'s testimony was an abuse of discretion. *See Silva*, 889 F.3d at 709.

e. *The websites*

i. Additional background

A search of Mr. Isabella's computer revealed three website addresses he had visited during the same time period as his interactions with S.F. When Special Agent Anderson entered the addresses into a browser in 2016 (three years later), two websites showed S.F.'s name as a student at a middle school in Colorado; the third website showed her recorded time for a middle school cross-country meet in 2012. The Government printed screenshots of the websites and offered them as exhibits in its rebuttal case to prove Mr. Isabella knew S.F. was a minor. Mr. Isabella objected, arguing that the websites were not properly authenticated. The district court overruled his objection and admitted the exhibits. Mr. Isabella challenges this ruling on appeal.

ii. Legal background

Rule 901 requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In assessing an exhibit's authenticity, we ask "whether there is a reasonable probability that the evidence has not been altered in any material aspect since the time of the crime and that it reasonably has a tendency to establish facts of consequence in the action as more probable than they would be without the evidence." *United States v. Brewer*, 630 F.2d 795, 802 (10th Cir. 1980). Although Rule 901 serves an important gatekeeping function, "[t]he bar for authentication of evidence is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).

43

Courts evaluate the authenticity of websites based on the purpose for which the website is being offered.[25] The Second Circuit's analysis of website authentication is instructive. *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014). In *Vayner*, the district court admitted a printout of the defendant's profile on VK.com, "the Russian equivalent of Facebook." *Id.* at 128. The government "initially advanced the argument that it offered the evidence simply as a web page that existed on the Internet at the time of trial, not as evidence of [the defendant's] own statements." *Id.* at 131. But in its argument to the jury, the government "insisted that the page belonged to and was authored by [the defendant]." *Id.* The Second Circuit held that the website was not properly authenticated for that purpose: "[T]he mere fact that a page with [the defendant's] name and photograph happened to exist on the Internet at the time of [the investigating agent's] testimony does not permit a reasonable conclusion that this page was created by the defendant or on his behalf." *Id.* at 132.

---

[25] *Compare O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) (holding district court abused its discretion in failing to take judicial notice of party's website to establish damages), *with Hansen v. PT Bank Negara Indon. (Persero)*, 706 F.3d 1244, 1249-50 (10th Cir. 2013) (holding district court did not abuse its discretion in excluding evidence of a phone number found on a website that no longer existed to argue that statements made during calls to that number were admissible). *See also Powers v. Emcon Assocs., Inc.*, No. 14-CV-03006-KMT, 2017 WL 2718476, at *6 (D. Colo. June 23, 2017) (surveying cases in which courts excluded website printouts for lack of authentication).

### iii. Analysis

The district court did not abuse its discretion in admitting the printouts of the three websites based on Special Agent Anderson's testimony. The websites were relevant and offered to show that Mr. Isabella believed S.F. was a minor. Unlike the webpage at issue in *Vayner*, the Government here did not introduce the exhibits to show that Mr. Isabella or S.F. had any role in their creation. *See* 769 F.3d at 131. The author of the websites was not relevant to the point they were used to prove, which was simply that they "existed on the Internet," *see id.* at 131, and Mr. Isabella's computer showed he visited the web addresses. The prosecution used Special Agent Anderson's search—which Mr. Isabella does not challenge—to show that the agent obtained the web addresses from Mr. Isabella's computer and to explain that Mr. Isabella likely visited them in 2013 during his communication with S.F.

Special Agent Anderson testified that he took the web addresses directly from Mr. Isabella's search history and entered them into an internet browser. In doing so, he viewed three separate webpages showing S.F. competed in cross country meets and was a student at a middle school in Colorado. The details of Special Agent Anderson's investigation, in particular the forensic analysis showing he retrieved the web addresses from Mr. Isabella's computer, provide "evidence sufficient to support a finding that the [websites are] what [the Government] claims [they are]," *see* Fed. R. Evid. 901(a), especially when we have no reason to believe they were "altered in any material aspect since the time of the crime," *see Brewer*, 630 F.2d at 802.

45

Finally, even after the websites were admitted, Mr. Isabella remained free "to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *See Vayner*, 769 F.3d at 131 (quotations omitted). In short, the district court did not abuse its discretion in overruling Mr. Isabella's authentication objection.

### f. *Grooming testimony*

#### i. Additional background

Homeland Security Investigation Special Agent Michael Thomas interviewed Mr. Isabella as part of his investigation and testified on direct examination about his conversation with Mr. Isabella. During the interview, Mr. Isabella claimed he frequently acted as a counselor in his online communications. At trial, Special Agent Thomas recounted Mr. Isabella's response:

> Q. Did the topic of grooming come up at that point in time?
>
> A. Yes. That was a question after his explanation of how he befriended and gained the trust of these individuals. The question was asked to the defendant if he was grooming these individuals.
>
> Q. Why was grooming brought up?
>
> MR. GAINOR: Objection, relevance, Your Honor. This is his statement—just a question and answer I think would be appropriate.
>
> THE COURT: Overruled.

46

Q. (BY MS. RANGEL) You can answer that.

A. Grooming is a technique that we sometimes see in child exploitation investigations to try to morph [an] individual's opinions and behaviors to the person who is doing the grooming, desires.

Q. Why was that particular topic brought up in response to the defendant saying he was a counselor?

A. It was the way he characterized it, as a befriending first, gaining people's trust. He didn't just jump in to [sic] being a counselor. It wasn't a normal counselor relationship where, I have a problem, let me help you with this problem. It was friendships and building relationships that had nothing to do with that problem, and trying to morph their behavior through—morphing them of [sic] their behavior.

ROA, Vol. VIII at 612-13.

ii. Analysis

On appeal, Mr. Isabella contends that Special Agent Thomas was not an expert and therefore was not qualified to testify about "grooming."[26] At trial, however, Mr. Isabella did not object to Special Agent Thomas's qualifications as an expert. Instead, he objected to the "relevance" of the grooming testimony.

Ordinarily, "[a]n appellant who fails to preserve an evidentiary objection below may argue and establish plain error on appeal," however, a "[f]ailure to argue plain error on appeal waives the argument." *United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir.

---

[26] Expert testimony on grooming can be admissible to explain the "modus operandi of sex offenders. The methods sex offenders use are not necessarily common knowledge." *Batton*, 602 F.3d at 1202.

2018).  If an appellant raises a plain error argument for the first time in the reply brief, we will consider that argument only if it "permit[s] the appellee to be heard and the adversarial process to be served." *United States v. Zander*, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015).  We will not consider an appellant's argument unless it attempts to "run the gauntlet created by our rigorous plain-error standard of review." *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012).

In his opening brief, Mr. Isabella does not argue for plain error review.  *See* Aplt. Br. at 11.  In his reply brief, he mentions "plain error" in relation to Special Agent Anderson's testimony only in a single paragraph (without any citations).  *See* Aplt. Reply Br. at 21.  In that paragraph, Mr. Isabella states in conclusory fashion that the district court committed plain error.  But he does not recite our plain error standard until the final page of his reply brief, *id.* at 24, and even then, he simply asserts the plain error elements are met.

Mr. Isabella's plain error argument does not permit "the adversarial process to be served," *Zander*, 794 F.3d at 1232 n.5, and is "too general and conclusory to warrant review," *Collins v. Diversified Consultants Inc.*, No. 17-1446, 2018 WL 5310173, at *3 (10th Cir. Oct. 26, 2018) (unpublished) (cited for persuasive value under Fed. R. App. P. 32.1, 10th Cir. R. 32.1).  Under these circumstances, he has waived this argument and we do not address it.  *See Roach*, 896 F.3d at 1192; *see also See* Fed. R. App. P. 28(a)(8)(A) (requiring appellant's brief to contain "appellant's contentions and the

reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

*    *    *    *

To recap, we affirm (1) the admission of the penis picture and (2) the torso pic under Rule 403; (3) the exclusion of the circumstances surrounding the torso pic under Rule 412; (4) the introduction of M.E.'s rebuttal testimony under Rule 404(b); and (5) the admission of the websites under Rule 901. We (6) hold that Mr. Isabella waived his argument regarding Special Agent Thomas's grooming testimony.[27]

## C.  *Double Jeopardy*

In his final argument, Mr. Isabella asserts that his two convictions and sentences under § 2422(b) and § 2251(a) and (e) violate the Double Jeopardy Clause. The Government concedes that "Counts I and II rely on the same conduct" but contends that different elements of the two offenses preclude Mr. Isabella's challenge. Aplee. Br. at 43. After setting forth additional background information, we explain the legal principles underlying our double jeopardy analysis. Then, applying de novo review, *see United States v. Benoit*, 713 F.3d 1, 12 (10th Cir. 2013), we conclude that the Government is correct because the elements of § 2422(b) do not encompass the elements of § 2251(a) and (e). An offense under the latter statute is therefore not a lesser included offense of

---

[27] Because we find no error in the district court's evidentiary rulings, we do not address Mr. Isabella's "cumulative error" argument.

49

the former, and Mr. Isabella's convictions and sentences under both statutes do not constitute a double jeopardy violation.

1. **Additional Background**

The parties addressed the double jeopardy issue multiple times in district court. In response to the indictment, Mr. Isabella requested a bill of particulars, asking the district court to order the Government to explain "[t]he exact nature of the sexual activity the defendant allegedly coerced or enticed [S.F.] into engaging in." ROA, Vol. I at 75. The court denied the motion but noted that a bill of particulars could help "combat double jeopardy" under some circumstances. ROA, Vol. I at 354.

The district court addressed double jeopardy indirectly at a pretrial jury instruction conference. In an exchange with the prosecutor about § 2422(b), the court said:

> Depending on what the jury ultimately concludes, that will depend on our jury verdict form. That is why I think the verdict form, itself, is going to have to be very carefully tailored. The [double jeopardy] issue could be implicated in different ways.
> For example, if the jury finds Mr. Isabella guilty on Count 1, but the predicate "sexual activity" on which the jury bases its conviction is enticement of sexual intercourse and or oral sex, as opposed to the production of child pornography, there would be no [double jeopardy] issue if the jury finds Mr. Isabella guilty of Count 2.
> In other words, which criminalized sexual activity operates as the predicate for each enticement count is necessarily going to define whether there [is] a [double jeopardy] prong [sic, problem?]. So, the means by which I intend to address that is the use of a Special Verdict Form where we will require the jury to identify which of the criminal sexual activities form the basis for their conviction; whether one or both or neither on each enticement count.

ROA, Vol. VIII at 88-89. In this exchange, the district court suggested, but did not decide, that there would be a double jeopardy problem if the jury selected the production of child pornography as the underlying § 2422(b) offense for Count 1.

As noted above, the jury stated on the special verdict form that the underlying offense for the § 2422(b) charge was the production of child pornography. Mr. Isabella moved for acquittal based on double jeopardy following the verdict. At this point, the district court changed its view of the double jeopardy issue and denied Mr. Isabella's motion. It did not compare the elements of the offenses to make this determination. Instead, it stated that the statutes charged in Count 1 and Count 2 had different "purpose[s]," "target[s]," and "gravamen": "Where Section 2422(b) is defined by its focus on criminalizing a perverse interaction, Section 2251 exists to criminalize the exploitation of minors for the purpose of producing child pornography." ROA, Vol. VIII at 1860-62.

## 2. **Legal Background**

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy." U.S. Const. amend. V. It provides three constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North*

51

*Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989) (footnotes omitted).

Mr. Isabella invokes the third protection here, arguing he was convicted and sentenced for the "same offense" under 18 U.S.C. §§ 2422(b) and 2251(a) and (e). The parties agree that he was found guilty of simultaneously violating these statutes. We must determine, therefore, whether § 2422(b) and § 2251(a) are the "same offense." This question turns on whether Congress intended that these statutes impose separate punishments when the same conduct violates them. *See Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

As noted above, 18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

And 18 U.S.C. § 2251 provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e) . . . .

> (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years . . . .

52

Section 2422(b) encompasses "prostitution or any sexual activity for which any person can be charged with a criminal offense," while § 2251(a) is limited to "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." But should they be treated as the "same offense" because § 2251(a) and (e) is a lesser included offense of § 2422(b)? The answer calls for application of the *Blockburger* test, which the Supreme Court developed as a means to determine congressional intent.

In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court said that two offenses are the same for double jeopardy purposes unless each requires proof of a fact that the other does not. The *Blockburger* rule is known as the "same elements test." *United States v. Pearson*, 203 F.3d 1243, 1268 (10th Cir. 2000). Under this test, when one offense is a lesser-included offense of another, the two offenses are the same. *See Rutledge v. United States*, 517 U.S. 292, 307 (1996); *United States v. Dixon*, 509 U.S. 688, 698 (1993); *Harris v. Oklahoma*, 433 U.S. 682, 682 (1977); *see also Steele v. Young*, 11 F.3d 1518, 1523 (10th Cir. 1993).

To determine what may be a lesser-included offense, courts focus on the textual elements of the offenses. *Carter v. United States*, 530 U.S. 255, 260-61 (2000). In general, statutes punish the "same offense" when one offense contains all the elements of another even if it contains additional elements. *See Brown v. Ohio*, 432 U.S. 161, 168 (1977) (concluding that joyriding was a lesser included offense of auto theft). For

53

example, in the context of felony murder, the Supreme Court said, "When . . . conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one." *Harris*, 433 U.S. at 682. *Whalen v. United States*, 445 U.S. 684, 693 (1980) provides another example: "Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape . . . ." *See also Benoit*, 713 F.3d at 13 (holding possession of child pornography is a lesser included offense of receiving child pornography).

3. **Analysis**

Under *Blockburger*, we examine the elements of each offense to determine whether one can be considered a lesser-included offense of the other. *Carter*, 530 U.S. at 260-61. The problem for Mr. Isabella is that a key element of the two statutes is not only different, it is broader in the statute that he needs to be a lesser included offense for his double jeopardy argument to work.

The offense of attempting to violate § 2422(b) requires the following elements:

> (1) the defendant knowingly attempted to persuade, induce, entice, or coerce;
>
> (2) any individual who is younger than 18;
>
> (3) to engage in any sexual activity for which any person can be charged with a criminal offense;
>
> (4) the defendant used a facility of interstate or foreign commerce to commit the crime; and

54

(5) took a substantial step toward commission of the offense.

The offense of attempting to violate § 2251(a) and (e) requires the following elements:

> (1) the defendant attempted to employ, use, persuade, induce, entice, or coerce a child to engage in sexually explicit conduct;

> (2) the defendant believed the child was under the age of 18;

> (3) the defendant engaged in this behavior for the purpose of producing a visual depiction of such conduct;

> (4) the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or affecting interstate or foreign commerce or mail or the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce; and

> (5) the defendant took a substantial step toward the commission of the offense.

The third element of § 2422(b) is broader than the third element of § 2251(a), and even if the former encompasses the latter such that the third element of § 2251(a) is a lesser-included element of § 2422(b), Mr. Isabella's double jeopardy claim founders when we compare the first element of each statute.

Section 2422(b) requires proof that the defendant "knowingly *persuades, induces, entices, or coerces* any individual who has not attained the age of 18 years." (Emphasis added.) Section 2251(a) and (e) requires proof that the defendant "*employs, uses, persuades, induces, entices, or coerces*." (Emphasis added.) Because § 2422(b) does not include the words "employs" or "uses," this element of § 2251(a) and (e) is broader than

55

the corresponding element in § 2422(b), and therefore the former cannot be a lesser included offense of the latter. Indeed, the indictment used the foregoing italicized language in Counts 1 and 2 of the indictment, respectively, making it possible, for example, that the jury convicted Mr. Isabella on Count 1 for "persuading" and on Count 2 for "employing" or "using."

To expand on this analysis, § 2422(b) proscribes persuading, inducing, enticing, or coercing a minor "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." This quoted language is broader than the parallel language in § 2251(a): "engage in[] any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." 18 U.S.C. § 2251(a). Accordingly, for Mr. Isabella's double jeopardy argument to succeed, § 2251(a) and (e) must be a lesser include offense of § 2422(b).

But the language in § 2251(a)—"employs, uses, persuades, induces, entices, or coerces"—is broader than the corresponding language in § 2422(b)— "persuades, induces, entices, or coerces." It follows that § 2251(a) and (e) cannot be a lesser included offense of § 2422(b) for double jeopardy purposes, and Mr. Isabella's challenge to his convictions on this ground fails.[28]

---

[28] Mr. Isabella argues the "activity for which any person can be charged with a criminal offense" under § 2422(b) was the same activity for his conviction under § 2251(a). Aplt. Br. at 33. He further argues "the conduct for which Mr. Isabella was convicted under Section 2422(b) overlaps completely with the conviction under Section

## III. **CONCLUSION**

We uphold Mr. Isabella's convictions and affirm the district court's judgment.

---

2251(a)." *Id.* But the Government does not contest that Mr. Isabella was convicted under both statutes for the same conduct. That is the starting point for the double jeopardy analysis. Even if Mr. Isabella were correct that § 2251(a)'s production of child pornography element falls within § 2422(b)'s "activity for which any person can be charged with a criminal offense," that is not the end of the *Blockburger* analysis. As we have shown above, because the first element of § 2251(a) is broader than the first element of § 2422(b), § 2251(a) is not a lesser-included offense.

57